The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: _____

Filing Date: April 19, 2021

**No. A-1-CA-38089**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

**v.**

**SANDI TAYLOR and MARY TAYLOR,**

      Defendants-Appellants.

**APPEAL FROM THE DISTRICT COURT OF ROOSEVELT COUNTY**
**Donna J. Mowrer, District Judge**

Hector H. Balderas, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM

for Appellee

Harmon, Barnett & Morris, P.C.
Tye C. Harmon
Clovis, NM

Wray Law P.C.

Katherine Wray
Albuquerque, NM

for Appellants

**OPINION**

**B. ZAMORA, Judge.**

{1}     Defendants Mary Taylor and Sandi Taylor appeal their convictions for one count of reckless child abuse resulting in great bodily harm, contrary to NMSA 1978, Section 30-6-1(E) (2009), and one count of reckless child abuse resulting in death, contrary to Section 30-6-1(F). On appeal, Defendants contend (1) there was insufficient evidence to support their convictions; (2) the district court erred in denying Defendants' requested jury instructions; (3) the district court abused its discretion in its evidentiary rulings at trial; (4) the alleged evidentiary issues at trial resulted in cumulative error; and (5) their convictions violated their right to be free from double jeopardy. We affirm.

**BACKGROUND**

{2}     Defendants owned Taylor Tots, a daycare they operated from their home in Portales, New Mexico. On July 25, 2017, Defendants had twelve children under their supervision, the two youngest being one-year-olds M.J. and A.L. (collectively, Victims). Defendants drove the group of children in two separate sport utility vehicles (SUVs) to a local park. During the return trip from the park, prior to 1:00 p.m., one of the children defecated, prompting Defendant Sandi to rush into the home

to change the child's diaper. Ten of the twelve children exited the SUVs. However, Defendants failed to remove Victims from the SUV, and both remained buckled in their car seats. For over two hours and forty minutes, Defendants left Victims in their car seats while the temperature outside reached 91° F.

{3}     Defendant Sandi returned to the SUV shortly after 3:00 p.m. and discovered Victims still strapped into their car seats. Defendant Sandi observed that Victims were both blue in the face, and M.J. was unresponsive. Defendant Sandi called 911. Portales Police Department Officer Amador Lujan and paramedics arrived at the scene. M.J. died of a heat stroke, and A.L. suffered life-threatening injuries.

{4}     Defendants were arrested, and a grand jury indicted each Defendant on one count of reckless child abuse resulting in great bodily harm for A.L., and one count of reckless child abuse resulting in death for M.J. At trial, the State's theory was that Defendants' conduct on July 25, 2017, demonstrated a reckless disregard for the safety and health of Victims, which resulted in death and severe injuries. To demonstrate the harm allegedly caused by Defendants' conduct, the State presented medical testimony that M.J.'s death and A.L.'s injuries resulted from being left inside the hot SUV. Furthermore, the State presented testimony from the Children, Youth & Families Department (CYFD) and compliance reports showing Defendants were in violation of numerous CYFD safety policies on the day in question. In contrast, Defendants argued that M.J.'s death and A.L.'s injuries resulted from an

"accident" rather than from a "reckless disregard" for Victims' safety. The jury convicted Defendants on all counts. Defendants appeal.

**DISCUSSION**

**I.   Reckless Child Abuse**

{5}   This case requires us to determine whether a defendant who acts recklessly can still be convicted of child abuse even where the defendant is unaware that he or she committed an act or omission (i.e., forgetting and leaving a child unattended in a vehicle). Defendants argue that there is insufficient evidence to support their convictions for reckless child abuse because (1) they did not know they left Victims unattended in the SUV and therefore, they did not knowingly act or fail to act, and (2) the State failed to show Defendants acted with a reckless disregard for the safety of Victims. The State disagrees and contends that reckless child abuse does not require that a defendant be aware that he or she is acting or failing to act. Rather, the State argues that Defendants' convictions are supported by sufficient evidence because "Defendants knew [Victims] were originally in the [SUV,]" Defendants "created [the] risk by failing to take [Victims] out of the [SUV,]" and Defendants "then disregarded that risk by leaving them there." We agree with the State.

{6}   We begin by addressing whether criminal liability under the reckless child abuse statute requires that a defendant have knowledge of his act or failure to act (the actus reus) in addition to a culpable mental state. "A crime generally consists of

4

two elements, a physical, wrongful deed (the 'actus reus'), and a guilty mind that produces the act (the 'mens rea')." *State v. Gonzalez*, 2005-NMCA-031, ¶ 10, 137 N.M. 107, 107 P.3d 547 (internal quotation marks and citation omitted); *see State v. Padilla*, 2008-NMSC-006, ¶ 12, 143 N.M. 310, 176 P.3d 299 ("Typically, criminal liability is premised upon a defendant's culpable conduct, the actus reus, coupled with a defendant's culpable mental state, the mens rea."); *see also State v. Granillo*, 2016-NMCA-094, ¶ 9, 384 P.3d 1121 ("Observing that [a] conviction of child abuse cannot be sustained in the absence of sufficient evidence of both the *actus reus* and the *mens rea*." (alterations, internal quotation marks, and citation omitted)).

{7}     According to Defendants, to be culpable, a defendant must be aware that he or she is committing the criminal act or omission. Thus, they contend, it is the "ability to choose whether to commit the act that gives rise to criminal liability." *State v. Cole*, 2007-NMCA-099, ¶ 10, 142 N.M. 325, 164 P.3d 1024 (internal quotation marks and citation omitted).[1] Defendants rely on a series of cases

---

[1]Defendants argue that because the culpable reckless mental state will always be satisfied when a child is left unattended in a vehicle, reckless child abuse becomes a strict liability crime unless the jury must also conclude that the culpable act was intentional (done with knowledge that the act or omission occurred). We are unpersuaded. Defendants do not argue that leaving Victims unattended in the SUV for over two hours and forty minutes was not a substantial and unjustifiable risk, so we did not directly address the requirements for establishing harm in other sections of this opinion. However, our case law instructs that it is the gravity of the risk, which places "an individual on notice that his [or her] conduct is perilous and potentially criminal[,]" and that it "is the likelihood of harm which informs the court of the foreseeability of the risk when evaluating its magnitude." *State v. Schaaf*,

involving intentional acts to support their argument. *See State v. Arrendondo*, 2012-NMSC-013, ¶ 27, 278 P.3d 517 (affirming a conviction for reckless child abuse when a defendant's act, shooting a firearm into a house with a baby inside, "would allow a reasonable jury to have found that [the defendant] knew or should have known that his conduct created a substantial risk"); *State v. Gonzales*, 2011-NMCA-081, ¶ 32, 150 N.M. 494, 263 P.3d 271 (reversing a conviction for reckless child abuse when a defendant's act, driving drunk, failed to "endanger[] a particular child that was foreseeable at the time of the accident").

{8}    We agree that no New Mexico case has evaluated whether a conviction for reckless child abuse can result from an act or omission that occurred without a defendant's knowledge (i.e., the act of forgetting a child in a car). However, because "the plain language of a statute is the primary indicator of legislative intent[,]" we disagree that a defendant must knowingly commit an act or omission to be convicted of reckless child abuse. *High Ridge Hinkle Joint Venture v. City of Albuquerque*, 1998-NMSC-050, ¶ 5, 126 N.M. 413, 970 P.2d 599 (internal quotation marks and citation omitted); *see State v. Swick*, 2012-NMSC-018, ¶ 11, 279 P.3d 747 (holding

2013-NMCA-082, ¶ 9, 308 P.3d 160 (internal quotation marks and citations omitted). In assessing the degree of risk, we consider the length of time the conditions existed and the amount of supervision of the child. *Id.* Under such an analysis, if a child were not exposed to a sufficiently dangerous condition for a sufficient length of time, the risk would not be great enough to sustain a conviction. In other words, Defendants' arguments about strict liability miss the mark by ignoring this key requirement.

that the meaning of a criminal statute is defined primarily by the language of the statute itself). As provided by statute, reckless child abuse "consists of a person . . . [recklessly] and without justifiable cause, causing or permitting a child to be . . . placed in a situation that may endanger the child's life or health . . . or . . . exposed [the child] to the inclemency of the weather." Section 30-6-1(D)(1), (3). Nowhere in Section 30-6-1(D) does the word "intentional" or "knowingly" appear in describing the acts or omissions necessary to sustain a conviction for reckless child abuse, and we decline to read language into a statute that is not present. *See State v. Almeida*, 2011-NMCA-050, ¶ 10, 149 N.M. 651, 253 P.3d 941 ("We will not read into a statute language which is not there, especially when it makes sense as it is written." (internal quotation marks and citation omitted)).

{9}     Instead, the critical inquiry is whether Defendants' acts and omissions, irrespective of whether they were knowingly committed, caused or permitted "a child to be . . . placed in a situation that may endanger the child's life or health . . . or . . . exposed [the child] to the inclemency of the weather." Section 30-6-1(D)(1), (3). A defendant acts recklessly within the meaning of Section 30-6-1(D) when he or she disregards a "substantial and unjustifiable risk of serious harm to the safety or health of [a child]." UJI 14-622 NMRA (listing elements for reckless child abuse resulting in death); UJI 14-615 NMRA (listing elements for reckless child abuse resulting in great bodily harm). A substantial and unjustifiable risk is one that "any

7

law-abiding person would recognize under similar circumstances and that would cause any law-abiding person to behave differently . . . out of concern for the safety or health" of a child. UJI 14-622; *see State v. Consaul*, 2014-NMSC-030, ¶ 37, 332 P.3d 850 (stating that recklessness requires a defendant to "consciously disregard a substantial and unjustifiable risk of such a nature and degree that its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe"). "No specific intent to disregard [one's] obligations is involved" in the concept of conscious disregard; "[t]he only 'intent' involved is . . . purposely engaging in conduct which implies a conscious disregard of [one's] obligations." *In re Adoption of Doe*, 1984-NMSC-024, ¶ 10, 100 N.M. 764, 676 P.2d 1329 (internal quotation marks and citation omitted).[2]

{10}    Having rejected the argument that criminal liability under the reckless child abuse statute requires proof that a defendant has knowledge of his or her act, we next address Defendants' contention that the State failed to prove by sufficient evidence that their actions on the day in question demonstrated a reckless disregard of a substantial and unjustifiable risk. "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to

---

[2]Reckless child abuse does not require "the jury to find that [a defendant] *intended* to harm the children or that [a defendant] actually physically harmed the children." *State v. Ramirez*, 2018-NMSC-003, ¶ 17, 409 P.3d 902 (emphasis added).

8

a conviction." *State v. Cabezuela*, 2015-NMSC-016, ¶ 14, 350 P.3d 1145 (internal quotation marks and citation omitted). The question is whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Chavez*, 2009-NMSC-035, ¶ 11, 146 N.M. 434, 211 P.3d 891 (internal quotation marks and citation omitted).

{11}   Defendants do not direct our attention to (nor are we aware of any) authority in New Mexico involving a defendant leaving a child unattended in a vehicle for an extended period of time. We therefore turn to a similar case decided by the Court of Appeals of Virginia, wherein the defendant, a van driver for a daycare, challenged the sufficiency of the evidence for his conviction of felony child neglect. *Whitfield v. Commonwealth*, 702 S.E.2d 590, 594 (Va. Ct. App. 2010). In *Whitfield*, the defendant failed to account for the whereabouts of the children in his care, failed to double-check that all the children were safely in the daycare, and ultimately left a child in a van for an entire day, resulting in the child's death. *Id.* at 592. The court reasoned that the defendant "*created* the danger by strapping [the child], a thirteen-month-old baby, into the van and leaving him unattended on a hot day with little or no chance of being rescued." *Id.* at 595. In affirming the defendant's conviction, the court concluded that the defendant's "acts and omissions displayed a reckless or

9

indifferent disregard for [the child]'s safety under [the] circumstances." *Id.* (internal quotation marks and citation omitted).

{12}     Here, like the defendant in *Whitfield*, Defendants' conduct while caring for Victims on the day in question demonstrated a conscious disregard for their safety and health. *See Consaul*, 2014-NMSC-030, ¶ 37 ("Typical definitions of recklessness require an actor to consciously disregard a substantial and unjustifiable risk[.]"). Defendants failed to follow CYFD safety policies related to the care of minor children, and this disregard resulted in Victims being left unattended in a vehicle for a two-hour-and-forty-minute period. First, the State showed that CYFD specifically trained Defendants on the dangers of leaving children unattended in a vehicle. Defendants were apprised that children nationwide are frequently harmed after being left unattended in vehicles, and CYFD's trainings stressed the importance of preventing such incidents. Such evidence demonstrates that Defendants were aware that leaving children unattended in a car, particularly during hot weather, posed a substantial and unjustifiable risk.

{13}     In addition, the State showed, despite Defendants' awareness of this risk, Defendants disregarded CYFD safety policies designed to prevent harm to children—policies on which they had specifically been trained. First, Defendants were aware that that they needed permission from CYFD to drive children in their personal vehicles. Defendants nevertheless drove twelve children, including

10

Victims, to the park without CYFD's permission. Second, Defendants were trained on CYFD policies requiring caregivers to perform headcounts to account for all children under their supervision when "transitioning" from one location to another. Defendant Sandi explained that it was Defendants' routine practice to perform headcounts of the children in her care, but nevertheless admitted that Defendants failed to perform a headcount after returning from the park. Defendants' disregard for CYFD's policies on the day in question, especially the headcount policy, is analogous to the defendant's failure in *Whitfield* to complete the logbook—both policies were designed to account for children. *See Whitfield*, 702 S.E.2d at 595 (stating that the defendant "did not use the van logbook specifically designed to ensure that this kind of tragedy would never occur").

{14}    In addition, the State showed that Defendants failed to follow CYFD policies on the day in question despite having been reprimanded for violating CYFD policies in the past.[3] In our view, Defendants' repeated failure to follow CYFD safety policies despite trainings and past reprimands demonstrates a "conscious[] disregard" for the safety and health of Victims amounting to "a gross deviation from the standard of conduct that a law-abiding person would observe." *Consaul*, 2014-NMSC-030, ¶ 37. In addition to the failures described above, Defendants also

---

[3]These prior violations include an instance where Defendants had too many children in a vehicle and instances where Defendants exceeded the number of children allowed under their supervision.

exhibited a "gross deviation from the standard of conduct that a law-abiding person would observe" by failing to follow their own internal accountability procedures, to take basic steps to ensure Victims' safety, and to take appropriate action when presented with evidence that Victims were absent. *See id.* Defendant Sandi admitted that she failed to unbuckle the two youngest children under their supervision, despite knowing that both Victims were incapable of unbuckling themselves. Moreover, prior to travelling to the park with the children, Defendants placed twelve sleeping mats (one for each child in their care) in preparation for an afternoon nap after their return to the day care. When Defendants returned from the park, the ten children who exited the SUVs napped or watched a movie, and neither Defendant noticed that the two mats belonging to Victims remained empty. Defendant Sandi also prepared menus for the children, including specific "baby menus" for Victims. Defendant Sandi admitted that her normal "every day" practice while preparing the menus was to take "attendance" of the children. Despite this routine practice, Defendant Sandi apparently did not take attendance on that day and, thus, failed to notice Victims' absence. Finally, Defendant Sandi admitted she "forgot those two babies" in her SUV, and when asked whether she had an explanation as to why she forgot Victims, she responded, "I don't."

{15}    Overall, the evidence demonstrates that Defendants evinced a conscious disregard for the risk they "*created*" by leaving Victims unattended in an SUV "on

12

a hot day with little or no chance of being rescued." *Whitfield*, 702 S.E.2d at 595. And, like the defendant in *Whitfield*, Defendants' inactions on the day in question, "displayed an inexcusable pattern of reckless indifference" that led to Victims remaining in the SUV. *Id.* at 594-95 (describing the defendant's failure to "look" for the victim and the failure to "double[-]check" to ensure all children were safe); *see id.* at 594 (stating that leaving the victim unattended in a vehicle for an entire day and failing to follow safety procedures "cannot be dismissed as simply a momentary, inadvertent act of ordinary negligence" but rather "an inexcusable pattern of reckless indifference"). Such a pattern of repeated failures to follow CYFD safety policies and to pay attention to common-sense indicators of Victims' absence satisfies the recklessness requirement set forth in Section 30-6-1(D). Accordingly, we hold that sufficient evidence supports Defendants' convictions for reckless child abuse resulting in death, Section 30-6-1(F), and reckless child abuse resulting in great bodily harm, Section 30-6-1(E).

## II. Jury Instructions

{16} We next address Defendants' challenges to the jury instructions given at trial. If "a challenge to the jury instructions has been preserved, we review for reversible error." *State v. Ellis*, 2008-NMSC-032, ¶ 14, 144 N.M. 253, 186 P.3d 245. "Reversible error arises if . . . a reasonable juror would have been confused or misdirected" by the jury instruction. *State v. Parish*, 1994-NMSC-073, ¶ 4, 118 N.M.

13

39, 878 P.2d 988. "The propriety of jury instructions given or denied is a mixed question of law and fact. Mixed questions of law and fact are reviewed de novo." *State v. Salazar*, 1997-NMSC-044, ¶ 49, 123 N.M. 778, 945 P.2d 996 (citing *State v. Attaway*, 1994-NMSC-011, ¶ 10, 117 N.M. 141, 870 P.2d 103).

{17} Defendants' argument regarding jury instructions is two-fold. First, Defendants contend that the district court erred by failing to instruct the jury on their proposed definitional instructions. Second, Defendants argue that the elements instruction for reckless child abuse "failed to appropriately identify the alleged conduct that endangered" Victims.

## A. Definitional Instructions

{18} Defendants maintain that the elements instruction did not explicitly require the jury to find that Defendants' conduct be (1) "a voluntary [a]ct or omission" and (2) that their "reckless disregard be conscious." In order to cure these alleged failures, Defendants proposed a definition of reckless disregard and a definition of accidental conduct. We address each argument in turn.

{19} Defendants requested below that, in addition to the elements instruction, the district court instruct the jury on the definition of reckless disregard as set forth in UJI 14-133 NMRA. UJI 14-133 provides, "[f]or you to find that the defendant acted with reckless disregard in this case, you must find that the defendant acted with willful disregard of the rights or safety of others and in a manner which endangered

14

any person or property." Relying on the committee commentary for UJI 14-133, the district court denied Defendants' requested instruction. The committee commentary to UJI 14-133 states that this definition "should be used when the offense involves criminal negligence and the essential elements instruction, or other instruction to be used with the essential elements instruction, does not define the term 'reckless,' 'negligence,' or similar term." UJI 14-133 comm. cmt.; *see* UJI 14-133 use note 1 ("This instruction should not be given with any elements instruction which already adequately defines the concept of a defendant's criminal negligence set forth by the Supreme Court."). Here, the elements instruction, UJI 14-622, already defined the mens rea necessary to convict Defendants for reckless child abuse. Specifically, UJI 14-622 required the State to prove Defendants acted with a "reckless disregard," defined reckless disregard for the jury, and required the State to establish their conduct was "more than merely negligent or careless." A reckless disregard entails conduct that causes or permits a "substantial and unjustifiable risk of serious harm to the safety or health of" a child. *Id.* Because the appropriate mens rea was already set forth in UJI 14-622, we see no error in the district court's denial of Defendants' proposed UJI 14-133 instruction.

{20}     We next address Defendants' proposed jury instruction, which provided a definition of accidental conduct. The proposed instruction fell outside the language of the uniform jury instructions for reckless child abuse resulting in death and

15

reckless child abuse resulting in great bodily harm. *See* UJI 14-622 (death); UJI 14-615 (great bodily harm). Defendants proposed that the district court instruct the jury as follows:

> Evidence has been presented that the death of [M.J.] and the great bodily harm of [A.L.] that occurred while in the care of . . . Defendants . . . was accidental.
>
> Accidental means injury resulting from [an] unintended, unforeseeable, and unexpected cause.
>
> Accidental conduct cannot support a conviction for reckless child abuse.
>
> If you determine that the death of [M.J.] and the great bodily harm of [A.L.] was the result of accidental conduct you must find the Defendants not guilty.

The district court denied Defendants' proposed jury instruction but permitted Defendants to argue during closing argument that their conduct was accidental.

{21}    Jury instructions that track the language of the uniform jury instructions are "presumptively valid." *State v. Lucero*, 2017-NMSC-008, ¶ 30, 389 P.3d 1039. "[A]n elements instruction may only be altered when the alteration is adequately supported by binding precedent or the unique circumstances of a particular case, and where the alteration is necessary in order to accurately convey the law to the jury." UJI Crim. Gen. Use Note. The district court, in accordance with UJI 14-622, properly instructed the jury on elements necessary to find Defendants guilty of reckless child abuse. The district court instructed the jury that it must find that Defendants recklessly disregarded a "substantial and unjustifiable risk of serious

16

harm" by failing to follow CYFD procedures in caring for Victims and/or failing to remove Victims from the SUV. Because the elements instruction tracked the language of the uniform jury instruction for reckless child abuse, it accurately conveyed the law to the jury, and therefore Defendants' proposed accidental conduct instruction was unnecessary.[4] Accordingly, we hold that the district court did not err when it denied Defendants proposed instructions defining recklessness and accidental conduct.

## B.    Elements Instruction

{22}    Defendants argue that the elements instruction "failed to appropriately identify the alleged conduct that endangered" Victims because the "and/or" language stated in the given instruction "misled the jury." In essence, Defendants' argument is that the jury did not unanimously agree on the verdict. We disagree.

---

[4] Relying on *Arrendondo*, 2012-NMSC-013, ¶ 16, and *Gonzales*, 2011-NMCA-081, ¶ 15, Defendants argue that a jury cannot convict a defendant if an incident is merely an accident. Defendants' reliance on these cases is misplaced. Both cases support the proposition that a defendant's reckless behavior can lead to a conviction for child abuse. *See, e.g.*, *Arrendondo*, 2012-NMSC-013, ¶ 27 (affirming a defendant's conviction for reckless child abuse when he shot a firearm into a home knowing there was a "newborn baby" inside); *Gonzales*, 2011-NMCA-081, ¶ 31 (holding that it is proper to convict a defendant of reckless child abuse by endangerment when he or she "engage[s] in conduct that directs the risk at a child in a manner that is foreseeable and is likely to produce endangerment to the particular child"). Further, as noted above, the district court properly instructed the jury on the requisite mens rea to find that the death of M.J. and injuries to A.L. were caused by Defendants' recklessness. *See* UJI 14-622.

17

**{23}** "[W]here alternative theories of guilt are put forth under a single charge, jury unanimity is required only as to the verdict, not to any particular theory of guilt." *State v. Godoy*, 2012-NMCA-084, ¶ 6, 284 P.3d 410. "[A] jury's general verdict will not be disturbed in such a case where substantial evidence exists in the record supporting at least one of the theories of the crime presented to the jury." *Id.* (internal quotation marks and citation omitted). "[W]e have never suggested that in returning general verdicts in such cases the jurors should be required to agree upon a single means of commission, because different jurors may be persuaded by different pieces of evidence, even when they agree upon the bottom line." *Id.* ¶ 7 (internal quotation marks and citation omitted).

**{24}** The district court instructed the jury, in relevant part, as follows:

> [Defendants] did not follow proper rules and procedures mandated by CYFD in conducting the care of [Vicims], including failing to do headcounts, driving [Victims] without CYFD permission, failing to have [a] proper care giver to child ratio when [Victims were] in [Defendants'] care, and/or failing to remove [Victims] from a vehicle which resulted in [Victims] being left unattended in that vehicle and exposed to unsafe temperatures for a time period of approximately two hours and [forty] minutes.

**{25}** The district court was required to instruct the jury regarding the conduct or course of conduct alleged to be child abuse, and here, it did. *See* UJI 14-622 (child abuse resulting in death); UJI 14-615 (child abuse resulting in serious bodily injury). It instructed the jury on two theories: failure to comply with CYFD requirements and/or failing to remove Victims from their car seats. *See* UJI 14-622 (providing that

18

the state must produce evidence as to a defendant's "conduct or course of conduct alleged to have been child abuse"). As discussed above, substantial evidence supported Defendants' convictions for reckless child abuse and there was substantial evidence supporting both theories. *Cf. State v. Nichols*, 2006-NMCA-017, ¶ 16, 139 N.M. 72, 128 P.3d 500 ("While we do not know whether the jury unanimously agreed on which of the alternative means by which [the d]efendant committed [criminal sexual contact of a minor (CSCM)], we do know that the jury unanimously agreed that [the d]efendant committed CSCM, which is the controlling inquiry."). Despite Defendants' contention that the elements instruction misled the jury, Defendants do not point to anywhere in the record to demonstrate that the jury was confused as to the course of conduct alleged to be reckless child abuse. *See State v. Gardner*, 2003-NMCA-107, ¶ 30, 134 N.M. 294, 76 P.3d 47 (concluding that there was no error in a tendered elements instruction when the defendant pointed to nothing "in the record suggesting that the verdicts were not unanimous"). In light of these considerations, we will not invade the province of the jury, which unanimously decided on a verdict. Accordingly, the district court did not err by tendering the elements instruction to the jury.

## III. Evidentiary Rulings

{26} We next address Defendants' arguments relating to the district court's evidentiary rulings at trial. Defendants argue that the district court abused its

19

discretion in admitting irrelevant and prejudicial evidence of Defendants' prior failure to comply with CYFD safety policies and in excluding a lay opinion "from former police [O]fficer Hyde that the whole event was a tragic accident." The State responds that the district court properly admitted evidence that Defendants had previously failed to comply with CYFD policies, arguing that "Defendants had been trained about what to do and had been advised of Taylor Tot's [lack of compliance,]" so Defendants' conduct on the day in question was not an accident but a "pattern of disregarding regulations." In addition, the State contends that the district court did not abuse its discretion in refusing to allow Officer Hyde to testify because "opinion testimony that seeks to state a legal conclusion is inadmissible."

{27}    In reviewing a district court's evidentiary ruling, "we defer to the trial judge's decision to admit or exclude evidence and we will not reverse absent a clear abuse of discretion." *State v. Woodward*, 1995-NMSC-074, ¶ 6, 121 N.M. 1, 908 P.2d 231 (internal quotation marks and citation omitted). "An abuse of discretion occurs when [a] ruling is clearly against the logic and effect of the facts and circumstances of the case." *Id.* (internal quotation marks and citation omitted). "An evidentiary ruling within the discretion of the court will constitute reversible error only upon a showing of an abuse of discretion, and a demonstration that the error was *prejudicial* rather than harmless." *State v. Jett*, 1991-NMSC-011, ¶ 8, 111 N.M. 309, 805 P.2d 78 (emphasis added) (citation omitted).

**{28}** Defendants' first contention is that evidence of their prior failure to comply with CYFD policies was irrelevant and prejudicial. Specifically, Defendants argue that the admission of evidence that Defendants violated CYFD policies was improper propensity evidence under Rule 11-404(B)(1) NMRA and thus, irrelevant under Rule 11-404(B)(2) and Rule 11-401 NMRA. At trial, the State elicited testimony from Allen Anderson, who introduced CYFD compliance reports demonstrating Defendants' lack of compliance with CYFD policies. The district court admitted the past reports finding Defendants' past failures in complying with CYFD policies were relevant under Rule 11-404(B)(2) to demonstrate a "lack of accident." Rule 11-404(B)(1) provides that evidence of a person's prior acts "is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." However, under Rule 11-404(B)(2) such evidence "may be admissible for another purpose, such as . . . absence of mistake, or lack of accident."

**{29}** According to the CYFD reports, Defendants failed to comply with CYFD policies, some of which the district court properly concluded were relevant to Victims overheating in the SUV, and others which were not relevant. We begin with the relevant information in the reports. *See* Rule 11-401 (providing that evidence is relevant if it "has any tendency to make a fact more or less probable" and "the fact is of consequence in determining the action"). The CYFD reports and Allen's

21

testimony, were relevant under Rule 11-404(B)(2) because Defendants' theory of the case was that they accidentally forgot Victims in the SUV. *See State v. Otto*, 2007-NMSC-012, ¶ 13, 141 N.M. 443, 157 P.3d 8 (holding that a district court did not abuse its discretion in admitting evidence of a defendant's prior conduct because it was necessary to refute the defendant's claim that the event was a "mistake or accident"). The reports showed that Defendants' previously violated CYFD's required caregiver to child ratios, and violated the CYFD policy for the number of children allowed in a vehicle. This information was relevant to Defendants' conduct on the day in question. *See State v. Bailey*, 2017-NMSC-001, ¶ 14, 386 P.3d 1007 (providing that "evidence of other wrongs may be admissible on alternative relevant bases so long as it is not admitted to prove conformity with character" (internal quotation marks and citation omitted)). Defendants violated the same CYFD policies on July 25, 2017, including driving children without CYFD's permission, failing to perform headcounts, and exceeding CYFD's required caregiver to child ratio. Accordingly, we conclude that the district court did not abuse its discretion in admitting evidence demonstrating Defendants' past failures in complying with CYFD policies.

{30}     We acknowledge that some of the evidence regarding Defendants' failure to comply with CYFD policies may not have been relevant to a fact of "consequence" in the case. *See* Rule 11-401(B). For example, on prior occasions, Defendants failed

22

to obtain written authorization from CYFD to apply sunscreen on children and failed to adhere to CYFD diaper changing guidelines by failing to wash the child's hands after changing a diaper. As to this irrelevant information, Defendants fail to demonstrate how the district court's admission of this information prejudiced them. *See Jett*, 1991-NMSC-011, ¶ 8 (recognizing that a defendant must make a demonstration of prejudice to warrant reversal for an evidentiary error). Given Defendants' failure to show that they were prejudiced by admission of the irrelevant evidence, we hold that the district court did not abuse its discretion in admitting such evidence.

{31} Next, we address Defendants' argument that the district court erred in not permitting Officer Hyde to answer the following question asked by defense counsel: "Based on your investigation in this matter, this was a tragic accident?" The State objected, asserting that Officer Hyde's testimony concerned the "ultimate issue" of whether Defendants' conduct on the day in question was an accident. That question, according to the State, was solely for the jury. Agreeing that the question was an "ultimate issue for the fact-finder," the district court sustained the State's objection. Nevertheless, Defendants were permitted to argue in closing that the death of M.J. and the injuries to A.L. resulted from a "tragic accident."

{32} We need not address whether the district court's ruling precluded Defendants from eliciting Officer Hyde's opinion that the death of M.J. and A.L.'s injuries

23

resulted from a "tragic accident" because even if we assume, without deciding, that the district court erred, Defendants once again fail to demonstrate how the exclusion prejudiced them. *Cf. State v. White*, 1994-NMCA-084, ¶ 14, 118 N.M. 225, 880 P.2d 322 ("Because we conclude that the error was harmless, we may assume, without deciding, that [the d]efendant is correct in his contention that there was error."). Here, Defendants baldly assert that exclusion of Officer Hyde's testimony prejudiced them, stating his testimony would "have been helpful to determine a fact in issue" and that the district court's "failure to admit this evidence likely affected the jury's verdict." As to these arguments, Defendants provide no citations to the record, no citation to authority, nor do they develop an argument that any prejudice resulted from the exclusion of Officer Hyde's testimony. *See Lukens v. Franco*, 2019-NMSC-002, ¶ 5, 433 P.3d 288 ("When a criminal conviction is being challenged, counsel should properly present [the appellate] court with the issues, arguments, and proper authority." (internal quotation marks and citation omitted)); *see also* Rule 12-318(A)(4) NMRA (requiring that an appellant's argument contain proper citations to "authorities, record proper, transcript of proceedings, or exhibits relied on"). Because Defendants fail to establish prejudice, we cannot say that the district court's decision to exclude Officer Hyde's testimony was an abuse of discretion. *See Gardner*, 2003-NMCA-107, ¶ 29 (concluding there was no error when a defendant only presented "speculative arguments about prejudice"); *see also*

24

*State v. Fernandez*, 1994-NMCA-056, ¶¶ 13, 16, 117 N.M. 673, 875 P.2d 1104 ("In the absence of prejudice, there is no reversible error.").

## IV. Cumulative Error

{33}    Defendants argue that the district court's failure to properly instruct the jury and its evidentiary errors, taken together, deprived them of a fair trial. "The doctrine of cumulative error applies when multiple errors, which by themselves do not constitute reversible error, are so serious in the aggregate that they cumulatively deprive the defendant of a fair trial." *State v. Ortega*, 2014-NMSC-017, ¶ 53, 327 P.3d 1076 (internal quotation marks and citation omitted). "The doctrine of cumulative error is to be strictly applied, and cannot be invoked if the record as a whole demonstrates that the defendant received a fair trial." *State v. Samora*, 2013-NMSC-038, ¶ 28, 307 P.3d 328 (alterations, omission, internal quotation marks and citation omitted). Because the district court did not err in instructing the jury and the evidentiary errors did not prejudice Defendants, we hold that there was no cumulative error.

## V. Double Jeopardy

{34}    Lastly, Defendants request that we vacate one of their convictions for reckless child abuse because their actions on July 25, 2017, which resulted in M.J.'s death and great bodily harm to A.L., were "unitary conduct" and therefore, violated the prohibition against double jeopardy. We are not persuaded. "The Double Jeopardy

25

Clause of the Fifth Amendment, enforced against the states by the Fourteenth Amendment, protects defendants from receiving multiple punishments for the same offense." *Ramirez*, 2018-NMSC-003, ¶ 38 (internal quotation marks and citation omitted). Because a double jeopardy claim is "a constitutional question of law," our review is "de novo." *Swick*, 2012-NMSC-018, ¶ 10.

{35}     "There are two classes of double jeopardy multiple-punishment cases: (1) the double-description case, where the same conduct results in multiple convictions under different statutes, and (2) the unit-of-prosecution case, where a defendant challenges multiple convictions under the same statute." *State v. Comitz*, 2019-NMSC-011, ¶ 26, 443 P.3d 1130 (internal quotation marks and citation omitted). Defendants argue that their convictions for reckless child abuse resulted from unitary conduct under the same statute and, as such, we apply a unit of prosecution analysis.

{36}     "The relevant inquiry in a unit of prosecution case is whether the Legislature intended [the] punishment for the entire course of conduct or for each discrete act." *State v. Bernard*, 2015-NMCA-089, ¶ 17, 355 P.3d 831 (alterations, internal quotation marks, and citation omitted). First, we review the plain language of a criminal statute to ascertain "whether the Legislature has defined the unit of prosecution." *State v. Olsson*, 2014-NMSC-012, ¶ 18, 324 P.3d 1230. If the language of the statute outlines the unit of prosecution, then we "follow[] that language and the inquiry is complete." *Id.* If the language is ambiguous, we "determine whether a

26

defendant's acts are separated by sufficient indicia of distinctness to justify multiple punishments." *Swick*, 2012-NMSC-018, ¶ 33 (internal quotation marks and citation omitted).

{37}    In this case, the jury convicted each Defendant of one count of reckless child abuse resulting in death, for M.J., and one count of reckless child abuse resulting in great bodily harm, for A.L. We recognize our Supreme Court's holding in *Ramirez*, 2018-NMSC-003, ¶ 55, stating that the language of the child endangerment statute in Section 30-6-1(D) is "ambiguous as to the unit of prosecution." Thus, we must determine whether Defendants' conduct in this case was separated by sufficient indicia of distinctness as to warrant separate convictions for reckless child abuse.

{38}    In determining whether a defendant's actions are separated by sufficient indicia of distinctness we look to "(1) the temporal proximity of the acts; (2) [the] location of the victim(s) during each act; (3) [the] existence of an intervening event; (4) sequencing of acts; (5) [the] defendant's intent as evidenced by his [or her] conduct and utterances; and (6) the number of victims." *State v. Carson*, 2020-NMCA-015, ¶ 34, 460 P.3d 54 (internal quotation marks and citation omitted). In analyzing a double jeopardy claim, the number of victims has a special significance because " '[m]ultiple victims will likely give rise to multiple offenses.' " *Ramirez*, 2018-NMSC-003, ¶ 57 (quoting *Herron v. State*, 1991-NMSC-012, ¶ 15, 111 N.M. 357, 805 P.2d 624); *see State v. Bernal*, 2006-NMSC-050, ¶ 18, 140 N.M. 644, 146

27

P.3d 289 ("While the existence of multiple victims does not, itself, settle whether conduct is unitary or distinct, it is a strong indicator of legislative intent to punish distinct conduct that can only be overcome by other factors.").

{39} Defendants rely on *State v. Castañeda*, 2001-NMCA-052, ¶ 12, 130 N.M. 679, 30 P.3d 368, in supporting the argument that their convictions for reckless child abuse violated the prohibition against double jeopardy. In *Castañeda*, the defendant drove three children while intoxicated, and none of the children sustained any injuries from the defendant's conduct. *Id.* ¶¶ 1-3. In driving the three children, we acknowledged that the defendant "committed one continuous act amounting to child abuse[,]"and held that the defendant's conduct "occurred during a single criminally negligent act[.]" *Id.* ¶¶ 14, 18. However, we emphasized, "a single unit of prosecution in a child abuse case involving multiple victims is only appropriate where the children have *not actually been harmed*." *Id.* ¶ 15 (emphasis added). Where "actual harm results from child abuse, . . . the focus shifts from the actions of the abuser to the result of those actions, and each child harmed is a distinct victim with unique injuries[,]" and "it is entirely appropriate to charge" a separate count for each victim. *Id.*

{40} In this case, Defendants' conduct resulted in reckless child abuse resulting in death to M.J. and great bodily harm to A.L. Dr. Cain, a forensic pathologist who performed the autopsy on M.J., opined that M.J. died from "hyperthermia" or heat

28

stroke. Furthermore, the evidence at trial indicated that A.L. had a body temperature of 108° F shortly after the incident and suffered severe injuries, which required A.L. to relearn how to talk, walk, eat, and breathe by herself. In direct contrast to the situation in *Castañeda*, here, both Victims were harmed by Defendants' conduct of leaving Victims unattended in the SUV. Accordingly, we hold that Defendants' convictions for reckless child abuse do not violate the prohibition against double jeopardy because each Victim suffered unique and distinct injuries constituting multiple violations of the statute.

**CONCLUSION**

{41}    We affirm.

{42}    **IT IS SO ORDERED.**


                    _____

                    **BRIANA H. ZAMORA, Judge**

**WE CONCUR:**


_____
**JACQUELINE R. MEDINA, Judge**


_____
**JANE B. YOHALEM, Judge**