## COMMONWEALTH *vs.* ANTHONY JOHNSON, SR.

No. 96-P-0759.

Hampden. November 25, 1997. - September 17, 1998.

Present: BROWN, SMITH, & LAURENCE, JJ.

*Practice, Criminal,* Instructions to jury, Presumption of innocence, Duplicative convictions, Verdict. *Abuse Prevention. Evidence,* Prior misconduct.

At a criminal trial, the judge's misstatement, in his preliminary instructions to the jury, of the presumption of innocence, and his characterization of his mistake as a "Freudian slip," did not create a substantial risk of a miscarriage of justice, where the judge immediately gave a correct instruction and repeated it after the jury was sworn and again in his final charge. [475-476]

At the trial of a complaint for violation of a protective order, the judge's erroneous instruction permitted the jury to find the defendant guilty on the basis of conduct not alleged in the complaint: a new trial was required. [476-478]

At the trial of complaints alleging threats and violation of a protective order, the judge properly admitted, with appropriate limiting instructions, probative evidence concerning the defendant's hostile behavior toward the victim during the several years of their relationship. [478-479]

In a criminal case, where the elements of the threats charges were not identical to the elements of a charge of violation of a protective order, the convictions and the multiple punishments imposed by the judge were not duplicative. [479-480]

At the trial of a complaint in five counts alleging threats, the judge's instructions to the jury on the requirement of a unanimous verdict were adequate. [480]

COMPLAINTS received and sworn to in the Springfield Division of the District Court Department on January 20, 1995.

The cases were tried before *Robert L. Howarth,* J.

*David Weingarten* for the defendant.

*Deborah D. Ahlstrom,* Assistant District Attorney, for the Commonwealth.

SMITH, J. On January 20, 1995, the defendant became the subject of two complaints issued in the District Court. The first

complaint charged the defendant with five counts of threatening to commit various crimes between the dates of September 2, 1994, and January 18, 1995. See G. L. c. 275, § 2.[1] The second complaint charged the defendant with violating a domestic protective order issued pursuant to G. L. c. 209A, from September 30, 1994, through January 18, 1995. A jury found the defendant guilty of threatening to commit the crimes of assault and battery, murder, malicious damage to property, and violating the protective order. He was found not guilty of threatening to commit the crimes of arson and mayhem.

On appeal, the defendant claims the judge committed error (1) in making certain statements to the prospective jurors prior to empanelment; (2) in instructing the jury regarding the elements of the crime of violating the protective order; (3) in allowing the admission in evidence of his prior bad acts; and (4) in failing to give a specific unanimity instruction regarding the elements underlying each crime charged. The defendant also argues that his convictions of threatening to commit the crimes of assault and battery, murder, and malicious damage to property were duplicative of his conviction of violating the protective order, and therefore those convictions must be vacated.

From the evidence, the jury could find the following facts. Sometime in 1990 or 1991, the defendant and the complainant, Jennifer Thibeault (Thibeault), became romantically involved. They lived together and subsequently had two children, a boy who was one and one-half years old at the time of trial, and a girl who was nine months old.

The defendant and the complainant had a tumultuous relationship, during which there were several physical confrontations.[2] On May 10, 1994, Thibeault obtained a restraining order pursuant to G. L. c. 209A ordering the defendant not to abuse or contact her, as well as to stay away from her home. The defendant was also ordered to surrender custody of their (at that time) only child. Because she was pregnant with their daughter, three days later Thibeault had the May 10 order amended to drop all the restraints except for the "no abuse" portion, so that

[1] The crimes the defendant allegedly threatened to commit were mayhem, murder, assault and battery, arson, and malicious damage to property.

[2] These encounters included an episode in September, 1994, which occurred just prior to the defendant's incarceration. See note 3, infra. On that date, the defendant approached the complainant on the street as she returned home from the grocery store, and struck her across the face.

the defendant could participate during the birth of their second child. The amended order forbidding the defendant to abuse Thibeault was to remain in effect until May 13, 1995.

On September 2, 1994, the defendant was incarcerated[3]; January 20, 1995, was his scheduled release date. During his confinement, the defendant and Thibeault frequently exchanged letters. Their relationship was cordial until sometime in November or December of 1994, when the defendant discovered that Thibeault was seeing another man. The defendant then proceeded to send Thibeault at least seventeen letters containing threats to harm her and her property. He also telephoned her and warned her that on "January 20th [he] would be out to bust [her] ass." In his last letter, which Thibeault received three days prior to his release date, the defendant wrote, "Things won't be too good, Jennifer. You thought you hated me before, just you wait. I have everything planned out for what's happened [sic] to you and to him."

On January 20, 1995, the present complaints were filed against the defendant.[4]

We now discuss the issues raised on appeal.

1. *The judge's "slip of the tongue."* Before the empanelment of the jury, the judge stated to the jury venire: "Does anybody not understand that Mr. Johnson is *presumed to be guilty* and that the burden is on the prosecution to prove this case beyond a reasonable doubt?" (Emphasis supplied.) After the session clerk brought the judge's misstatement to his attention, he stated, "Ladies and gentlemen, I've picked up on a, I guess it would be called a Freudian slip." He then proceeded to instruct the jury venire correctly on the presumption of innocence. The judge reiterated, however, that his mistake was a "Freudian slip," after which he again gave the correct instruction. The defendant did not object to the judge's misstatement, or his use of the expression "Freudian slip."

The defendant now argues that the judge's flawed preliminary instruction to the jury venire, and his attempt on two occasions to correct his error by describing it as a "Freudian slip" created

[3]Neither party gives the reason for the defendant's incarceration, although it appears to have been connected to the incident which occurred on the street. See note 2, *supra*.

[4]On January 19, 1995, the May, 1994, order was amended to restore the no contact restraint on the defendant. However, the defendant's trial was *not* concerned with any violation of that amended order.

a substantial risk of a miscarriage of justice, because it conveyed a message to the jury that the judge thought the defendant was guilty.[5]

The judge's instruction that the defendant was "presumed to be guilty" was obviously a slip of the tongue. It is indeed unfortunate that he twice characterized his misstatement as a "Freudian slip." The judge did, however, emphasize in his preliminary instructions that the defendant was presumed to be innocent, and that the burden was on the prosecution to prove its case beyond a reasonable doubt. The judge repeated those instructions both after the jury were sworn and in his final charge. Finally, the jury found the defendant not guilty on two of the charges, which is some indication that they understood the corrected instructions.

2. *Jury instructions on violation of G. L. c. 209A protective order.* A domestic protective order may contain one or more of the following restraints: "(a) . . . refrain from abusing the [complainant]. . . (b) . . . refrain from contacting the [complainant]. . . [or] (c) . . . vacate forthwith and remain away from the household, multiple family dwelling, and workplace." G. L. c. 209A, § 3, as amended by St. 1990, c. 403, § 3.

The order at issue forbade the defendant to abuse Thibeault. At trial, the Commonwealth claimed that the defendant violated the order by placing Thibeault in fear of imminent serious physical harm through the threats contained in his letters and at least one telephone call.

However, although the trial concerned whether the defendant had abused Thibeault, the judge's jury charge stated that the Commonwealth had to prove that the defendant violated the order by abusing Thibeault, ". . . *and/or [by] contacting [her]*" (emphasis supplied). There was no objection to the judge's instructions.

On appeal, the defendant claims that the judge's instructions created reversible error because they permitted the jury to find the defendant guilty of violating the domestic protective order on the basis of his contact with Thibeault by telephone and let-

---

[5]A "Freudian slip" has been defined as a "[m]isstatement theorized to reveal unconscious thought or a conflict or desire of the speaker." Redden and Beyer, Modern Dictionary for the Legal Profession (2d ed. 1996).

ter — a restraint that was not in the order.[6] We agree with the defendant that the judge's instructions were erroneous. Defense counsel, however, did not object to the judge's charge. Therefore, the question before us is whether the instructions created a substantial risk of a miscarriage of justice. *Commonwealth* v. *Pickles*, 393 Mass. 775, 776 (1985).

Here, the jury learned that the defendant had sent over three hundred letters to Thibeault while he was incarcerated. Because of this evidence, the judge's erroneous instructions, and other errors,[7] we are unable to conclude with certainty that the jury convicted the defendant for violating the order because he abused Thibeault or rather that the jury found the defendant guilty because he contacted her by letter and by telephone. "Where, as here, 'the verdict is supportable on one ground, but not on another, and it is impossible to tell which ground the jury selected,' the verdict must be set aside." *Commonwealth* v. *DiRenzo*, 44 Mass. App. Ct. 95, 100-101 (1997), quoting from *Yates* v. *United States*, 354 U.S. 298, 312 (1957), overruled on other grounds by *Burks* v. *United States*, 437 U.S. 1, 18 (1978). We hold that the error created a substantial risk of a miscarriage

---

[6]The judge made a similar misstep in his instructions on the meaning of the word "abuse." General Laws c. 209A, § 1, as amended by St. 1990, c. 403, § 2, defines "abuse" as "the occurrence of one or more of the following acts between family or household members: (a) attempting to cause or causing physical harm; (b) placing another in fear of imminent serious physical harm; [or] (c) causing another to engage involuntarily in sexual relations by force, threat or duress." It was the Commonwealth's theory at trial that the defendant "abused" Thibeault by "placing [her] in fear of imminent serious physical harm" through the threats contained in his letters and telephone call. Yet, the judge's instructions recited *all* of the definitions of abuse contained in G. L. c. 209A, § 1, two of which were not relevant to the charges against the defendant. The judge should have limited his charge to the specific act of alleged abuse; his failure to do so was, at best, confusing.

[7]Two additional errors during the trial also misinformed the jury that the defendant was charged with violating the domestic protective order by "contacting" Thibeault. At the start of the trial, the session clerk read the entire complaint to the jury. Thus, the jury were told that the defendant was charged with "fail[ing] to comply with a court order to refrain from abuse[,] *to vacate the household or multiple family dwelling or workplace or have no contacts with the plaintiff [Thibeault] or the plaintiff's minor child . . .*" (emphasis added). The reading of the complaint was error because the defendant was charged only with abuse, not with the other enumerated violations. In addition, the January 19 amended order forbidding the defendant's contacting Thibeault (see note 4, *supra*) was introduced in evidence and shown to the jury. That order was not relevant and should not have been allowed in evidence.

of justice. Therefore, there must be a new trial on the complaint charging the defendant with violating the protective order.

3. *Admission in evidence of prior bad acts.* The defendant claims that the judge erred in admitting evidence concerning his behavior toward the victim during their relationship.[8] The defendant argues that the evidence of his prior bad acts was not admissible because it was not relevant to establish any theory such as motive, opportunity, or intent to commit the crimes charged. See *Commonwealth* v. *Otsuki*, 411 Mass. 218, 235-237 (1991). The defendant also argues that under *Commonwealth* v. *Picariello*, 40 Mass. App. Ct. 902, 903 (1996), a defendant's conduct giving rise to a restraining order is inadmissible on the issue of whether his conduct subsequent to that order constituted a violation of the order.

The Commonwealth argues, however, that the evidence of prior abuse had a "strong logical connection" to the offenses charged. The Commonwealth contends that this evidence supported the prosecution's assertion that the victim reasonably feared imminent physical harm; it was essential to prove this element in order to win a conviction for the crimes with which he was charged. The Commonwealth also contends that the evidence of prior bad acts was relevant and probative, and any prejudice was cured by the judge's limiting instruction to the jury.

"It is well settled that the prosecution may not introduce evidence of a defendant's prior or subsequent bad acts for the purpose of demonstrating bad character or propensity to commit the crime charged." *Commonwealth* v. *Barrett*, 418 Mass. 788, 793 (1994), and cases cited. However, such evidence may be admissible for other relevant purposes. *Commonwealth* v. *Fordham*, 417 Mass. 10, 22 (1994). *Commonwealth* v. *Maimoni*, 41 Mass. App. Ct. 321, 327 (1996). If the evidence of prior bad acts is connected with the facts of the case and not too remote in time, it may be admitted to establish a course of conduct or state of mind. *Commonwealth* v. *King*, 387 Mass. 464, 472 (1982). *Commonwealth* v. *Helfant*, 398 Mass. 214, 224-225 (1986). *Commonwealth* v. *Yetz*, 37 Mass. App. Ct. 970, 971

---

[8]Specifically, the defendant cites the victim's testimony that their relationship was rocky, that there had been "eight or nine" physical confrontations between the two prior to September, 1994, that the defendant was "always in jail, he was always threatening me," and that the defendant had spent "all but eight or nine months" of their relationship in jail.

(1995). However, this evidence should be excluded when its prejudicial value substantially outweighs its probative effect. *Commonwealth* v. *Robertson*, 408 Mass. 747, 750 (1990). *Commonwealth* v. *Picariello*, 40 Mass. App. Ct. at 903.

Here, Thibeault's testimony was probative of the defendant's hostility toward her and his pattern of acting on that hostility. It was offered to show that as a result of the defendant's prior conduct, she reasonably feared that he would harm her. Contrast *Picariello, supra* (evidence of the defendant's prior bad acts was not probative and also highly prejudicial where only live issue at trial was whether the defendant did, in fact, violate a no contact order). Here, the evidence was probative, and any prejudice was minimized by the judge's careful instructions to the jury that such evidence could only be used for a limited purpose. Juries are presumed to follow such limiting instructions. See *Commonwealth* v. *Pope*, 406 Mass. 581, 588 (1990).

4. *Claim that threat convictions are duplicative of conviction for violation of G. L. c. 209A order.* The defendant was sentenced to two and one-half years in a house of correction for violating the protective order. On the three convictions of threatening to commit a crime, the defendant received three six-month sentences to be served in the house of correction, each six-month sentence to run on or after the other, and on and after the two and one-half year sentence.

The defendant argues that his convictions for the threats were duplicative of his conviction for violating the protective order, and must be vacated.

The rule in Massachusetts is that "[a] single act may be an offen[s]e against two statutes; and if *each* statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other." *Kuklis* v. *Commonwealth*, 361 Mass. 302, 306 (1972), quoting from *Morey* v. *Commonwealth*, 108 Mass. 433, 434 (1871). "So long as each offense includes an additional element that the other does not, 'neither crime is a lesser-included offense of the other, and convictions on both are deemed to have been authorized by the Legislature and hence not duplic[ative].' " *Commonwealth* v. *Arriaga*, 44 Mass. App. Ct. 382, 386 (1998), quoting from *Commonwealth* v. *Jones*, 382 Mass. 387, 393 (1981).

Here, the defendant concedes that the elements required to prove the threat charges were not identical to those required to

prove a protective order violation. The defendant argues, however, that because all of the charges are proved by the same evidence, the threat charges are duplicative of the charge of violating the protective order.

In *Commonwealth* v. *Crocker*, 384 Mass. 353, 357-361 (1981), the court abandoned the conduct-based approach advocated here by the defendant, and "permitted the imposition of multiple punishments for convictions of larceny by false pretenses . . . and uttering a forged instrument . . . despite the fact that both were premised on a single act (passing a forged check)." *Commonwealth* v. *Arriaga, supra* at 387. The court observed that "the Legislature is empowered to authorize multiple punishments for the same offense provided that all offenses are tried in a single proceeding." *Ibid.* In determining whether such authorization is given, the *Crocker* court relied on the elements-based standard established in *Morey. Commonwealth* v. *Crocker, supra* at 359-361. *Commonwealth* v. *Arriaga, supra* at 387-388.

Because the elements of the threat charges are not identical to the elements of violating the protective order, we hold that the judge could impose multiple punishments in this matter.

5. *Failure to give specific unanimity instruction.* The defendant claims that the judge's failure to give the jury a specific instruction that their verdict had to be unanimous as to the incidents or facts which supported each verdict, created a substantial risk of a miscarriage of justice. We have read the judge's instructions on this point and hold that they were adequate.

On the complaint charging the defendant with violation of a protective order, the judgment is reversed and the verdict is set aside. The remaining judgments are affirmed.

*So ordered.*