**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

**Opinion Number: 2024-NMSC-011**

**Filing Date: March 14, 2024**

**No. S-1-SC-38818**

**STATE OF NEW MEXICO,**

      Plaintiff-Respondent,

v.

**SANDI TAYLOR and MARY TAYLOR,**

      Defendants-Petitioners.

**ORIGINAL PROCEEDING ON CERTIORARI**
**Donna Mowrer, District Judge**

Harmon, Barnett & Morris, P.C.
Tye C. Harmon
Clovis, NM

Wray Law P.C.
Katherine Wray
Albuquerque, NM

for Petitioners

Hector H. Balderas, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM

for Respondent

<strong>OPINION</strong>

**VIGIL, Justice.**

**{1}** This appeal calls on us to once again consider the propriety of jury instructions in a reckless child abuse case, a recurrent theme in our jurisprudence. Most recently, *State v. Consaul* and *State v. Montoya* identified and examined several pervasive problems with then-existing uniform jury instructions on child abuse as defined in NMSA 1978, Section 30-6-1 (2009). *See Consaul*, 2014-NMSC-030, ¶¶ 27-40, 332 P.3d 850

(concluding that the uniform jury instructions for child abuse did not "adequately capture[] the true nature of the crime and the legislative intent behind the statute"); *Montoya*, 2015-NMSC-010, ¶¶ 16-34, 345 P.3d 1056, (noting "[t]he confusion caused by the dissonance between our case law and our jury instructions for child abuse"). This Court addressed these problems by implementing in 2015 the substantial revisions to our reckless child abuse jury instructions in effect today. *See* UJI 14-612, -615, -621, and -622 NMRA.

**{2}**     The problem with the jury instructions used at Defendants' joint trial arises from confusion and misdirection due to the unfortunate use of an inappropriate conjunctive term in the complex, essential-elements instructions that set out the course of conduct the jury was required to find in order to return guilty verdicts. The confusion and misdirection stem from the use of a single *and/or* connector to separate and join no fewer than four distinct propositions for the jury's consideration. The term *and/or* has proved singularly unsuited to formulating clear and effective jury instructions, to the degree that our trial courts would be well-served to avoid its use in jury instructions altogether. The underlying jury instructions' use—or, more accurately, misuse—of the *and/or* connector requires this Court to reverse Defendants' reckless child abuse convictions.

**{3}**     Our determination to reverse Defendants' convictions and remand for a new trial based on this instructional error makes it unnecessary for us to address Defendants' remaining arguments concerning the jury instructions, a double jeopardy merger claim, and evidentiary arguments. *State v. Mascarenas*, 2000-NMSC-017, ¶ 1, 129 N.M. 230, 4 P.3d 1221 (declining to reach other issues brought before the Court when the first issue supports reversal and remand).

## I.     BACKGROUND

**{4}**     The facts underlying this appeal are undeniably tragic. Defendants Mary Taylor and Sandi Taylor, mother and daughter, operated a licensed daycare out of their home in Portales, New Mexico. In July 2017, Defendants used two SUVs to drive the twelve children under their care to a nearby park for lunch and playtime. Of the six children who were passengers in Sandi's SUV, two of them, M.J. and A.L. (the Victims), were less than two years old, each riding in a car seat in the middle row of the SUV.

**{5}**     Driving from the playground in separate vehicles, Defendants and all twelve children returned to the daycare shortly before 1:00 p.m., when the outdoor temperature was 91 degrees. Upon arrival, all four of the older children who were riding with Sandi and all six of the children who were riding with Mary exited their respective vehicles and went inside the daycare. Without noticing that the Victims were still seated in Sandi's vehicle, both Defendants entered the daycare as well. Defendants remained there until Sandi, for reasons unrelated to the whereabouts of the Victims, returned to her vehicle over two-and-a-half hours later and found M.J. blue in color and unresponsive and A.L. limp and slouched over. Defendants immediately called the police and made diligent efforts to attend to the Victims, but their efforts were futile. Due to the Victims' prolonged heat exposure, M.J. died, and A.L. suffered severe neurological injuries.

**{6}** The State charged each Defendant with reckless child abuse by endangerment resulting in M.J.'s death and reckless child abuse by endangerment resulting in great bodily harm to A.L., both of which are first-degree felonies under Section 30-6-1(D)(1), (E)-(F). The evidence at trial was undisputed in several respects. The State stipulated that Defendants did not intend to leave the Victims in Sandi's vehicle, and responding police officers agreed that there were no signs that Defendants were aware that the Victims remained in the vehicle until Sandi returned to the vehicle. On this score, Sandi told police officers at the scene that both she and her mother believed the other had removed the Victims from the vehicle and brought them inside the daycare upon returning from the park.

**{7}** A videotape of Sandi's police interview containing candid admissions was played for the jury in its entirety. During the interview, Sandi acknowledged both that she "forgot" the Victims in the vehicle and that Defendants did not follow their usual practice to do a headcount of the children at any time after returning to the daycare.

**{8}** The jury convicted each Defendant of reckless child abuse resulting in death and reckless child abuse resulting in great bodily harm. Each Defendant was sentenced to eighteen years for each count, totaling thirty-six years each. The Court of Appeals affirmed in a precedential opinion. *See State v. Taylor*, 2021-NMCA-033, ¶ 1, 493 P.3d 463. On certiorari review, we reverse the Court of Appeals, holding that the essential conduct elements of the jury instructions *as given* constitute reversible error because they would have confused or misdirected a reasonable juror.

## II.    DISCUSSION

### A.    The Jury's Elements Instructions

**{9}** Defendants contend reversible error resulted when the district court failed to properly identify the conduct or course of conduct alleged to be child abuse in the elements instruction. Specifically, Defendants argue that the instruction's listing of the elements of essential conduct with an *and/or* conjunction provided for alternative ways for the jury to find that Defendants committed child abuse without requiring the jury to unanimously agree on any of those alternatives. Applying a de novo standard of review, we agree with Defendants.

**{10}** "The propriety of jury instructions given or denied is a mixed question of law and fact" which we review de novo. *State v. Salazar*, 1997-NMSC-044, ¶ 49, 123 N.M. 778, 945 P.2d 996. As Defendants preserved each of the instructional issues now raised, "we review the instructions for reversible error," *State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134, a process which requires us to consider the "instructions as a whole, not singly, and . . . look to see whether a reasonable juror would have been confused or misdirected by the . . . instructions," *State v. Munoz*, 2006-NMSC-005, ¶ 20, 139 N.M. 106, 129 P.3d 142 (internal quotation marks and citation omitted). "[J]uror confusion or misdirection may stem not only from instructions that are facially contradictory or ambiguous, but from instructions which, through omission or

misstatement, fail to provide the juror with an accurate rendition of the relevant law." *Benally*, 2001-NMSC-033, ¶ 12.

**{11}** The indictments are identical in how they allege Defendants committed child abuse. Pertinent here, Count 1 alleges each Defendant "left the child unattended in a heated vehicle, which resulted in the death of M.J.", and Count 2 alleges each Defendant "left the child unattended in a heated vehicle, which resulted in great bodily harm to A.L." At trial, the parties disagreed on how to describe the conduct required for the jury to find Defendants guilty of reckless child abuse. *See* UJI 14-615, -622 (requiring the court to "describe [the] conduct or course of conduct alleged to have been child abuse"). Defendants requested that the jury be required to find that Defendants left the Victims "unattended in a vehicle, exposed to unsafe temperatures, for a time period exceeding two hours." The State's requested instruction, adopted fully by the district court, identified four different acts. The district court instructed the jury that to find Defendants guilty of reckless child abuse, it had to find that

> [Defendants] did not follow the proper rules and procedures mandated by CYFD in conducting the care of [the Victims], *including* failing to do headcounts, driving [the Victims] without CYFD permission, failing to have [a] proper care giver to child ratio when [the Victims were] in [Defendants'] care, *and/or* failing to remove [the Victims] from a vehicle which resulted in [the Victims] being left unattended in that vehicle and exposed to unsafe temperatures for a time period of approximately two hours and 40 minutes.

(Emphases added.)

**{12}** As we explain next, the presence of *and/or* in the all-important conduct element of the essential-elements instructions confused and misdirected the jury and allowed it to make a finding of guilt on a legally inadequate basis.[1]

**{13}** More than seventy-five years ago, this Court criticized the use of *and/or* in the context of jury instructions:

> [T]he highly objectionable phrase "and/or" . . . has no place in pleadings, findings of fact, conclusions of law, judgments or decrees, and least of all in instructions to a jury. Instructions are intended to assist jurors in applying the law to the facts, and trial judges should put them in as simple

---

[1]Although the point is not raised by Defendants, we note the potential problems inherent in the use of the word *including* in these jury instructions. When used in this setting, the word *including*—"usually a term of enlargement, and not of limitation, that . . . connotes . . . an illustrative application," *United States v. Cline*, 986 F.3d 873, 876 (5th Cir. 2021) (internal quotation marks and citation omitted)—can allow a jury "to roam freely through the evidence and choose any facts which suit[] its fancy or its perception of logic to impose liability," *Scanwell Freight Express STL, Inc. v. Chan*, 162 S.W.3d 477, 482 (Mo. 2005) (en banc) (internal quotation marks and citation omitted). Without addressing this unraised issue head-on, we simply acknowledge there are additional concerns presented by the use of the word *including* alongside the already ambiguous term *and/or* in the conduct element of the jury instructions in this case.

language as possible, and not confuse them with this linguistic abomination.

*State v. Smith*, 1947-NMSC-048, ¶¶ 7-8, 51 N.M. 328, 184 P.2d 301 (involving the misuse of *and/or* in jury instructions that defined the essential elements of second-degree murder), quoted approvingly in Bryan A. Garner, *Garner's Dictionary of Legal Usage*, 57 (3d ed. 2011). And over the years other courts have joined this criticism. *See, e.g.*, *Garzon v. State*, 980 So. 2d 1038, 1043-45 (Fla. 2008) ("condemn[ing]" the unobjected-to use of the *and/or* conjunction between names of codefendants in jury instructions that set out the elements to be proven, but holding that the error was not fundamental); *State v. Gonzalez*, 130 A.3d 1250, 1255 (N.J. Super. Ct. App. Div. 2016) (concluding that the trial court's repeated use of the imprecise term *and/or* in its jury instructions was "so confusing and misleading as to engender great doubt about whether the jury was unanimous with respect to some part or all aspects of its verdict or whether the jury may have convicted the defendant by finding the presence of less than all the elements the prosecution was required to prove"); *Commonwealth v. Johnson*, 700 N.E.2d 270, 272-73 (Mass. App. Ct. 1998) (setting aside a verdict convicting the defendant of violating a domestic protective order based on an erroneous jury instruction that permitted a conviction upon a finding "that the defendant violated the order by abusing [the victim], '. . . *and/or [by] contacting [her]*,'" where contact was not "a restraint" prohibited by the order (alterations and omission in original)).

**{14}**    Commentators, too, have weighed in on the subject, including the aforementioned Bryan A. Garner, whose unvarnished view is that "the only safe rule to follow is not to use the expression [*and/or*] in any legal writing, document or proceeding, under any circumstances." Garner, *supra*, at 57 (internal quotation marks and citation omitted). But other commentators, including Professor Ira P. Robbins, espouse a more measured approach which recognizes that while the "proper use of *and/or* creates neither ambiguity nor confusion" in most areas of the law, the term "should not be used in jury instructions," especially "[i]n cases that involve more than one person, victim, or element of a crime or civil cause of action, [because] jury instructions that use the term [in that context] carry the risk of jurors making decisions they are not allowed to make." Ira P. Robbins, *"And/or" and the Proper Use of Legal Language*, 77 Md. L. Rev. 311, 315, 320 (2018).

**{15}**    Regardless of the circumstances or context of its legal usage, the intended meaning of the term *and/or* is rendered all the more confusing where, as here, it is used to both separate and join more than two propositions in a single statement. Professor Robbins explains the added complexities of this linguistic dilemma:

> Using *and/or* to separate two terms, such as "A and/or B," invites the reader to choose only A, only B, or both A and B. Thus, a reader is presented with only three options when *and/or* is used to separate two terms.

.   .   .

[However, as] opposed to "A and/or B," adding an additional proposition, C, can leave a reader guessing whether *and/or* is intended to be placed between all propositions or only some of the propositions. On the one hand, "A, B and/or C" could provide a choice among A, B, C, or any combination thereof, equal to 'A and/or B and/or C.' On the other hand, the placement of *and/or* between B and C might suggest that *and/or* is intended to provide a choice between only B and C, with A remaining a constant. In this scenario, the possible choices for the reader end up being A and B, A and C, or all three propositions.

Robbins, *supra*, at 316, 335 (footnotes omitted).[2] We agree with Professor Robbins that a trial court should not ask a lay jury to unravel such a complex syntactical problem. This fraught endeavor can serve only, and needlessly, to sidetrack a jury from its critical fact-finding role.

**{16}** The jury was required to parse the complexities created by the presence of multiple alternative propositions framed by a single *and/or* connector in determining whether the course of conduct allegedly engaged in by Defendants in the hours leading up to the tragic incident constituted reckless child abuse. The jury was left to pick and choose between what the court presented as no fewer than four alternative species of conduct attributed to Defendants and to assess the nature and severity of the risks each presented—both individually and in combination—with no guidance to aid its inquiry. This violated our teaching in *Consaul*, 2014-NMSC-030, ¶ 23, that "[w]hen two or more different or inconsistent acts or courses of conduct are advanced by the State as alternative theories as to how a child's injuries occurred, then the jury must make an informed and unanimous decision, guided by separate instructions, as to the culpable act the defendant committed and for which he is being punished."

**{17}** An additional problem with the conduct element of the essential-elements instructions goes beyond the convoluted form of the instructions and compounds juror confusion and misdirection. We refer to the fact that the multiple propositions set out in the instructions involve acts or omissions that fit into two separate and distinct categories of conduct. The first category is Defendants' alleged violations of one—or more—of the policies put into place by CYFD to promote the safe operation of daycare facilities in New Mexico. The second category is the exclusive focus on Defendants' ultimate conduct, as described in the underlying indictments, of having left the Victims "unattended in a heated vehicle."

**{18}** The record of the jury instruction conference reveals that the references in the instructions to Defendants' alleged CYFD lapses were intended, from the State's perspective, to satisfy the recklessness requirement of the charged child abuse

---

[2]It stands to reason that the number and complexity of choices that a jury need make necessarily increases in circumstances where, as in this case, four propositions are presented with but a single *and/or* conjunction. In this regard, the use of *and/or* serves to compound the comprehensibility problems already created by a jury instruction's "string[ing] of [multiple] items or attributes [in] lists." Robert P. Charrow & Veda R. Charrow, *Making Legal Language Understandable: A Psycholinguistic Study of Jury Instructions*, 79 Colum. L. Rev. 1306, 1329 (1979).

offenses by shedding light on the "the totality of circumstances" surrounding the incident and on all "the risks that [Defendants] disregarded." In contrast, the jury instructions' reference to Defendants' ultimate act of neglecting to remove the Victims from the vehicle intended to relate to the conduct or *actus reus* component of the child abuse charges. But the divergent purposes and relative import of these two categories of conduct were never explained to the jury. In combining these two distinct categories of elements, the district court gave the jury confusing and misleading instructions that failed to "provide members of the jury with a clear and correct understanding of what it is they are to decide." *State v. Bovee*, 394 P.3d 760, 772 (Haw. 2017) (internal quotation marks and citation omitted); *id.* (finding reversible error in a jury instruction which "conflated the 'conduct' and 'attendant circumstances' elements of the offense" charged); *see also State v. Traeger*, 2001-NMSC-022, ¶ 22, 130 N.M. 618, 29 P.3d 518 (concluding that the combining of two independent elements of a crime in a single jury instruction made for "awkward phraseology" and an unduly "complicated" instruction).

**{19}**   It is thus clear that a reasonable juror, at least one untrained as a linguist, "would have been confused or misdirected by the jury instruction[]." *Munoz*, 2006-NMSC-005, ¶ 20 (internal quotation marks and citation omitted). This conclusion is buttressed by empirical studies that confirm the substantial conceptual challenges jurors face in properly understanding the interplay between criminal "intent and act requirements." Avani Mehta Sood, *What's So Special About General Verdicts? Questioning the Preferred Verdict Format in American Criminal Jury Trials*, 22 Theoretical Inquiries L. 55, 65-66 (2021) (noting that mock jurors who participated in experiments conducted by the author reported "that they misperceived the act element of the offense as an alternative to the intent element, or they treated proof of intent as sufficient for conviction regardless of whether the requisite act had been proven"). The essential-elements instructions here only added to jury confusion and misdirection instead of lessening these problems.

**{20}**   In the final analysis, the conduct element instructions, with their complex structure and prominent use of the term *and/or*, on their face, allowed the jury to make a "decision[] they [were] not allowed to make," Robbins, *supra*, at 320. That is to say, the jury was allowed to return guilty verdicts *solely* based on one or more of Defendants' alleged CYFD violations. For our analysis, this Court need not dispositively address the legal efficacy of each of the several conviction choices available to the jury under the essential-elements instructions as framed. Instead, it is enough to point out that the jury, as instructed, could have convicted Defendants on the charged felony child abuse crimes for merely failing to obtain agency permission to transport the children to and from a nearby park. This technical violation of the agency's policies could not support a stand-alone finding that Defendants placed the Victims in any "direct line of danger." *State v. Garcia*, 2014-NMCA-006, ¶ 10, 315 P.3d 331 (recognizing that "[t]he risk [associated with child endangerment] cannot be merely hypothetical, as the child must be physically close to an inherently dangerous situation of the defendant's creation" (emphasis, internal quotation marks, and citation omitted)).

**{21}**   In rejecting Defendants' arguments under this point, the Court of Appeals relied on *State v. Godoy*, 2012-NMCA-084, ¶ 6, 284 P.3d 410, reiterating that "where

alternative theories of guilt are put forth under a single charge, jury unanimity is required only as to the verdict, not to any particular theory of guilt" and that a "jury's general verdict will not be disturbed in such a case where substantial evidence exists in the record supporting at least one of the theories of the crime presented to the jury." *Taylor*, 2021-NMCA-033, ¶¶ 22-23 (internal quotation marks omitted). For two reasons, the Court of Appeals inappropriately relied on *Godoy*. First, because the issue argued in *Godoy* was not preserved, the *Godoy* Court initially addressed whether there was a fundamental error in the instructions, *Godoy*, 2012-NMCA-084, ¶ 4, whereas the issue in this case was preserved. Second, and decisively, *Godoy* has no applicability to cases, such as this case, in which one of the alternatives on which the jury is allowed to return a guilty verdict is legally inadequate. *State v. Sena*, 2020-NMSC-011, ¶ 47, 470 P.3d 227; *see also Johnson*, 700 N.E.2d at 273 (concluding that when a verdict is supported on one ground but not another, and it is impossible to tell on which ground the jury relied, the verdict is invalid); *see generally State v. Dowling*, 2011-NMSC-016, ¶ 17, 150 N.M. 110, 257 P.3d 930 (stating that "if an instruction is facially erroneous it presents an incurable problem and mandates reversal" (internal quotation marks and citation omitted)). Defendants' convictions are reversed due to the confusing, misleading, and incorrect elements instructions given to the jury.

## B.    Sufficiency of the Evidence

**{22}**    Having determined that the improper use of *and/or* in the elements instructions mandates reversal, we next consider Defendants' sufficiency of the evidence claim to determine whether the prohibition against double jeopardy prevents a retrial. *See State v. Garcia*, 2021-NMSC-019, 488 P.3d 585, ¶ 22 (stating that under well-settled precedent, if the evidence presented at trial was insufficient to support the conviction, double jeopardy entitles a defendant to dismissal of the charges on remand).

**{23}**    In seeking an outright dismissal of the underlying reckless child abuse charges instead of a new trial, Defendants point to both the parties' trial stipulation that Defendants did not intend to leave the Victims inside the vehicle and the police testimony confirming that Defendants were initially unaware that the Victims had remained in the vehicle upon Defendants' returning to the daycare. From this, Defendants maintain that their failure to remove the Victims from the vehicle "was the result of accidental, inadvertent, or unknowing conduct" beyond the reach of New Mexico's reckless child abuse statute. As Defendants frame the argument, for a caregiver to commit reckless child abuse by leaving a child in a hot car, "the [caregiver] must know [that] the child has been left in the hot car." There being no evidence presented that Defendants actually knew the Victims were left in the vehicle when Defendants returned to the daycare, they assert they are entitled to a dismissal of the charges. The Court of Appeals rejected Defendants' argument. *State v. Taylor*, 2021-NMCA-033, ¶¶ 7-9. For the following reasons, we also reject Defendants' argument.

**{24}**    We have already rejected the premise that a prerequisite to the imposition of criminal liability for reckless child abuse is a defendant's subjective knowledge that a substantial and unjustifiable risk of harm actually exists. Instead, the reckless element of child abuse in New Mexico is properly evaluated under an objective test.

**{25}** In *Consaul*, we recognized that our existing uniform jury instructions on negligent child abuse were confusing. 2014-NMSC-030, ¶ 28. They combined concepts of civil negligence using "knew or should have known" with criminal negligence and "reckless disregard." *Id.* (internal quotation marks and citation omitted). To avoid any further confusion, we determined that what had previously been called "'criminally negligent child abuse'" would thereafter be called "'reckless child abuse'" without any reference to negligence, as being consistent with the Legislature's intent "to punish acts done with a reckless state of mind" for a violation of Section 30-6-1. *Id.* ¶¶ 36-38. We also determined that our uniform jury instructions would be changed to reflect that to find a defendant guilty of reckless child abuse, a jury must find that the defendant acted with reckless disregard. *Id.* ¶ 40. In 2015, we adopted UJI 14-622 to set forth the essential elements a jury must find on a charge of child abuse resulting in death and UJI 14-615 to set forth the essential elements a jury must find on a charge of child abuse resulting in great bodily harm. Both require the jury to find that a defendant acted with "reckless disregard." UJI 14-615, -622. Those instructions were given in this case. In order to find that Defendants committed child abuse resulting in death and child abuse resulting in great bodily harm, the jury was required to find that each Defendant

> showed a reckless disregard for the safety or health of [the Victims]. To find that [Defendant] showed a reckless disregard, you must find [Defendant's] conduct was more than merely negligent or careless. Rather, you must find that [Defendant] caused or permitted a substantial and unjustifiable risk of serious harm to the safety or health of [the Victims]. A substantial and unjustifiable risk is one that any law-abiding person would recognize under similar circumstances and that would cause any law-abiding person to behave differently than [Defendant] out of concern for the safety or health of [the Victims].

Under our instructions, the standard for the jury to determine whether "a substantial and unjustifiable risk" exists is objective: it is what "any law-abiding person" would recognize under the circumstances and which would cause "any law-abiding person" to act differently. UJI 14-615, -622. Subjective, actual knowledge of the risk is not an element of reckless child abuse under the UJIs.

**{26}** Nor is subjective knowledge required under *Consaul*. *See* 2014-NMSC-030, ¶¶ 37, 40 (adopting reckless disregard as the standard for negligent child abuse and resolving to address whether "knew or should have known" should remain in the child abuse instructions); *see also, e.g.*, UJI 14-622 (setting forth an objective standard for "reckless disregard" without reference to *knew or should have known*).

**{27}** We are not alone in requiring a jury to decide whether a defendant caused or permitted a substantial unjustifiable risk of serious harm to the safety or health of a child to be determined against an objective standard. For example, in *People v. Valdez*, 42 P.3d 511 (Cal. 2002), a prosecution was brought under a statute which provides that anyone who "'willfully causes or permits [a] child to be placed in a situation where his or her person or health is endangered'" is guilty of felony child abuse. *Id.* at 514 & n.3 (citation omitted). The jury convicted the defendant for having entrusted her infant

daughter to a caregiver—the defendant's live-in fiancé—who had a history of mistreating the infant and who ultimately beat and shook the infant to death. *Id.* at 513. As recounted by the California Supreme Court, the Court of Appeal of California held that the statute required proof that the accused "know or be aware of the danger." *Id.*

**{28}** The California Supreme Court granted the attorney general's petition for review and reversed. *Id*. at 513-14. In support of the Court of Appeal's holding, the defendant argued to the *Valdez* Court that to satisfy the felony endangerment prong of the statute, a defendant "must have a subjective awareness of the risk" involved. *Id.* at 519. The *Valdez* Court squarely rejected that premise as unsupported by the statutory language and as "inconsistent with the purpose of [the statute], which is to protect vulnerable members of society from a wide range of dangerous situations." *Id.* The *Valdez* Court explained that the "defendant's interpretation would harm children and the elderly by protecting their abusers from prosecution through the erection of an unjustified, and difficult to establish, evidentiary hurdle of subjective awareness of the risk." *Id.* (internal quotation marks omitted).

**{29}** An example, the *Valdez* Court pointed out, was *Walker v. Superior Court*, 763 P.2d 852 (Cal. 1988), in which "the mother's concern for her daughter and good faith belief [that] prayer would cure her, would negate such subjective intent despite the fact the mother intentionally withheld medical treatment from the four-year-old daughter resulting in her suffering and death." *Valdez*, 42 P.3d at 519. Pertinent to the case before us, the *Valdez* Court noted that infant hyperthermia deaths resulting from parents or caretakers leaving infants in cars fell in the same category, because the parents or caretakers "could claim they had no idea the car temperature would rapidly rise to a fatal level." *Id*. The court concluded that imposing a subjective awareness of the risk "would contravene the legislative intent to impose criminal liability on persons who flagrantly disregard the health and safety of children in their custody or care." *Id.*

**{30}** *Whitfield v. Commonwealth*, 702 S.E.2d 590 (Va. Ct. App. 2010), also supports our reasoning and conclusion. On a summer morning, the defendant in *Whitfield*, a van driver whose job was to pick up and deliver children to daycare, placed a thirteen-month-old infant, already strapped into his car seat, in the first-row bench seat directly behind the driver's seat. *Id.* at 592, 594-95. Upon arriving at the daycare, the defendant unloaded all of the children except the infant. *Id.* Although the defendant "understood it was his responsibility," he failed to follow several safety protocols to ensure no children remained in the van. *Id.* at 592. Several of these lapses in protocol led to the infant's death from environmental heat exposure, including the defendant's failure "to look for [the infant] after unloading the other children from the van—despite having personally secured him . . . in the first passenger row of the van earlier that morning," *id.* at 593-95; failure to "double check" to make sure the van was empty, both after dropping the other children off at the daycare and driving the van back to his home, "unaware [the infant] was still in the car seat directly behind him," *id.* at 592, 595; and failure to make use of either of two logbooks—one kept inside the van and the other kept inside the daycare—that the defendant's employer trained him to use "to help him keep track of [and confirm] the children he . . . dropped off at the daycare," with the defendant choosing instead "to rely solely on his memory," *id.* at 592.

**{31}** On these facts, the Court of Appeals of Virginia affirmed the defendant's conviction for involuntary manslaughter and felony child neglect, the latter crime characterized as a criminal negligence offense that applied a "reckless disregard standard." *Id.* at 594 (internal quotation marks and citation omitted). The following substantial portions of the *Whitfield* Court's supporting analysis ring true here.

> In cases involving children, [the] reckless disregard standard can be shown by conduct that subjects a child to a substantial risk of serious injury, as well as to a risk of death, because exposure to either type of risk can endanger the child's life. It is not only the nature of the act or omission that matters. The vulnerability of the victim plays an equally important role in the culpability calculus. A course of conduct that satisfies the ordinary care standard when directed toward an adult might be gross, and even criminal, negligence toward children of tender years. It necessarily follows that greater precaution must be taken when a course of conduct puts a young child at risk of harm.
>
> When determining a defendant's culpability, we apply an objective standard . . . [, under which the prosecution] need not prove that an accused actually knew or intended that [his] conduct would likely cause injury or death, but rather that the accused [was on notice that his] acts created a substantial risk of harm. . . . .
>
> Governed by these principles, we hold [the defendant's] actions cannot be dismissed as simply a momentary, inadvertent act of ordinary negligence[, having instead] displayed an inexcusable pattern of reckless [behavior].

*Id.* (third alteration in original) (footnote, internal quotation marks, and citations omitted). We note that like the statute in *Whitfield*, our child abuse statute sets forth a criminal negligence offense that requires a "reckless disregard." *See* § 30-6-1(A)(3) (defining "negligently" to include acting with "reckless disregard"); *see also Consaul*, 2014-NMSC-030, ¶¶ 40, 43 (holding that the crime of negligent child abuse requires a showing of "reckless disregard").

**{32}** Courts in other jurisdictions have reached similar conclusions as the *Whitfield* Court on like reasoning. *See, e.g.*, *State v. Morton*, 741 N.E.2d 202, 203-05 (Ohio Ct. App. 2000) (affirming the child-endangering conviction of a foster mother who left a three-week-old infant in a closed van parked at a shopping center on a hot day for thirty to forty minutes, having mistakenly assumed that the other adult—or one of seven older children—in the vehicle had taken the infant into the store, and without "check[ing] the van herself to ensure that all of the children were properly supervised"); *State v. Every*, No. W2005-00547-CCA-R3-CD (Tenn. Crim. App. June 28, 2007) (unpublished) (upholding the reckless endangerment conviction of the assistant director of a daycare facility whose "admitted" failure "to personally inspect" the interior of a daycare van for the presence of children despite a directive to do so constituted "a conscious disregard

of a substantial risk which resulted in the [two-year-old] victim's abandonment and ultimate death").

**{33}** The appeal now before us has much in common with the preceding cases. Like the defendants in *Whitfield* and *Every*, Defendants here admit that they failed to undertake known and reliable safety precautions—conducting a headcount or a complete visual inspection of Sandi's SUV upon the children's return to the daycare—in a situation admittedly known to be of high risk. Likewise, each of our Defendants, like the defendant in *Morton,* baselessly assumed that the other had removed the imperiled children from the vehicle.

**{34}** Given these *objective* indicia of culpability, while Defendants were not *subjectively* aware that they left the Victims stranded inside the vehicle, Defendants were well aware of the significant danger to life and safety created by leaving children in a closed vehicle on a hot day. Additionally, Defendants failed, without explanation or justification, to take routine and familiar precautionary measures to ensure that they avoided such a dangerous occurrence. Under the jury instructions given, a reasonable jury could find that Defendants' inactions showed a reckless disregard for a substantial and unjustifiable risk of serious harm to the safety or health of the Victims. The evidence thus was sufficient to permit retrial without violating Defendants' right to be free from double jeopardy.

## III. CONCLUSION

**{35}** Based on the significant risk of jury confusion and misdirection created by the use of the ambiguous term *and/or* in identifying Defendants' underlying course of conduct in the jury instructions as framed, we reverse Defendants' reckless child abuse convictions and remand for a new trial consistent with this opinion.

**{36} IT IS SO ORDERED.**

**MICHAEL E. VIGIL, Justice**

**WE CONCUR:**

**C. SHANNON BACON, Chief Justice**

**DAVID K. THOMSON, Justice**

**RODERICK T. KENNEDY, Judge, retired
Sitting by designation**

**JAMES T. MARTIN, Judge
Sitting by designation, dissenting**

**Martin, Judge (dissenting).**

**{37}** I am unable to agree with the majority's conclusion that Defendants' convictions must be reversed because of a flawed essential elements instruction the jury received in this case. Taken as a whole, the instruction at issue correctly sets forth the law applicable to Defendants' underlying course of conduct, which in turn supports the jury's unanimous guilty verdicts. While the language of the instruction at issue may to some degree suffer, as the majority concludes, insofar as there is indeed a difference in meaning between the words "and" and "or," I cannot agree that use of both terms alternatively "would have confused or misdirected a reasonable juror." *Maj. op.* ¶ 8. A reasonable juror can understand that the "and/or" structure of the elements instruction simply provided alternative ways for the jury to unanimously agree on any event or events that resulted in the failure of Defendants to remove the Victims from the vehicle that exposed them to fatally high temperatures. And, as highlighted by the Court of Appeals now being reversed, Defendants flag nothing in the record that suggests the jury was confused as to the course of conduct alleged to be reckless child abuse or whether that conduct met the requirements for conviction. *See State v. Gardner*, 2003-NMCA-107, ¶ 30, 134 N.M. 294, 76 P.3d 47 (concluding that there was no error in a tendered elements instruction when the defendant pointed to nothing "in the record suggesting that the verdicts were not unanimous"). Accordingly, I respectfully dissent.

## I.    DISCUSSION

**{38}** To begin, the majority primarily cites secondary sources, i.e., law reviews, to support their condemnation of the use of the term "and/or" in the district court's jury instructions.[3] However, in one of the law reviews cited, *"AND/OR" and the Proper Use of Legal Language*, 77 Md. L. Rev. 311 (2018), the author, Ira P. Robbins, acknowledges,

> While grammarians, scholars, and judges typically despise *and/or*, the problems associated with it are often wrongly attributed to the term itself. Many criticisms that *and/or* is imprecise or ambiguous ignore that the term has a definite meaning: it is "a formula denoting the items joined by it can be taken either together or as alternatives"——i.e., "*A or B, or both*." Critics urge those wanting to use *and/or* to simply write out its meaning for the sake of clarity. Given the term's definite meaning,

---

[3]The majority also cites three out-of-state cases in support of the rejection of the use of the term "and/or." However, those cases are readily distinguishable from the facts and jury instructions at issue in this appeal. In *Garzon v. State*, 980 So. 2d 1038 (Fla. 2008), the jury instructions at issue placed the "and/or" conjunction as between two codefendants' criminal liability. Furthermore, dicta from that case lists a long string of Florida cases in which "and/or" was criticized but did not constitute reversible error. In *State v. Gonzalez*, 130 A.3d 1250 (N.J. Super. Ct. App. Div. 2016), the "and/or" connector was used repeatedly throughout the trial court's jury instructions to connect both codefendants' criminal liability as well as to connect two different crimes (robbery and/or assault). Finally, in *Commonwealth v. Johnson*, 700 N.E.2d 270 (Mass. App. Ct. 1998), the appellate court's opinion was neither supportive nor critical of the "and/or" connector but rather reversed the conviction because one of the factual alternatives was outside of the proscribed criminal conduct prohibited by the domestic violence restraining order. In that case, the parties to the domestic violence restraining order had stipulated to some contact but only prohibited "threatening" communications. However, the trial court instructed the jury that it could convict the Defendant for threatening the victim "and/or" by contacting her.

however, proper use of *and/or* creates neither ambiguity nor confusion. Of course, *and/or* critics seem to overlook that any term can be ambiguous when used incorrectly. In short, the term's potential for confusion has been severely overstated——drafters should seek to incorporate it where appropriate.

*Id.* at 315 (citations omitted). As discussed hereinafter, the term "and/or" was used correctly in this matter and thus did not contribute to jury confusion or misdirection.[4]

**{39}** I further take issue with the majority's determination, *see maj. op.* ¶ 21, that the Court of Appeals inappropriately relied upon *State v. Godoy*, 2012-NMCA-084, 284 P.3d 410. First, the majority maintains *Godoy* addressed only whether there was fundamental error in the instructions given in that case because the issue argued was not preserved, whereas here the issue was preserved. Such does not, in my view, eliminate the usability of *Godoy*. Rather, as this Court stated in *State v. Benally*, 2001-NMSC-033, 131 N.M. 258, 34 P.3d 1134,

> The standard of review we apply to jury instructions depends on whether the issue has been preserved. If the error has been preserved we review the instructions for reversible error. If not, we review for fundamental error. Under both standards we seek to determine "whether a reasonable juror would have been confused or misdirected by the jury instruction."

*Id.* ¶ 12 (citations omitted). Thus, whether the standard of review is for fundamental or reversible error, we must answer "whether a reasonable juror would have been confused or misdirected by [a] jury instruction." Second, in determining *Godoy* to be inapplicable here, the majority concludes that one or some of the alternatives on which the jury herein was given permitted it to return a guilty verdict that was legally inadequate. *See maj. op.* ¶ 21. It is this issue that goes to the heart of whether reversal is warranted, and on which my disagreement with the majority rests.

**{40}** Here, the majority construes the jury instruction to have permitted the jury to "return guilty verdicts *solely* based on one or more of Defendants' alleged CYFD violations," including "failing to obtain agency permission to transport the children to and from a nearby park. This technical violation of the agency's policies could not support a stand-alone finding that Defendants placed the Victims in any 'direct line of danger.'" *Maj. op.* ¶ 20 (citation omitted). My view, however, is that but for these actions by Defendants, the children would never have been in the "'direct line of danger,'" *maj. op.* ¶ 20 (citation omitted), as revealed by the evidence at trial. The record amply supports

---

[4] I note as well that the majority supplements its underestimation of the jury's capacity to understand the same instruction by criticizing use of the word "including" within it. In this regard, the majority states that "[w]ithout addressing this unraised issue head-on, we simply acknowledge there are additional concerns presented by the use of the word *including* alongside the already ambiguous term *and/or* in the conduct element of the jury instructions in this case." *Maj. op.* ¶ 12 n.1. Such was neither raised by Defendants nor, in my view, should factor into today's decision.

that Defendants failed to follow the proper rules and procedures mandated by the Children, Youth & Families Department (CYFD) in caring for the Victims, by each of the following alleged actions: (1) failing to do headcounts to ensure that all children in Defendants' care were present and accounted for when changing locations; (2) driving the Victims to the park on the day in question without CYFD permission leading to the eventual result of the Victims being left in the vehicle; (3) failing to have a proper care giver to child ratio to ensure proper attention and care was given to the children. These actions led to the tragic events of the day and to Defendants' failure to remove the children from the vehicle, thus exposing the Victims to the unsafe temperatures for an extended period of time. These actions are the "'direct line of danger,'" *maj. op.* ¶ 20 (citation omitted), which supports the convictions. Each of these failures and the ensuing calamity are all clearly established by evidence presented by the State in the trial record. Unlike the majority, I believe that a review of each of these factors is necessary in this analysis and that such a review demonstrates that all of these "conviction choices," *maj. op* ¶ 20, placed the children in the "'direct line of danger,'" *maj. op.* ¶ 20 (citation omitted), resulting in the serious bodily injury of one of the Victims and the tragic death of the other. In focusing on what it perceives to be a technical violation of CYFD policy, the majority overlooks how all of these factors demonstrate reckless disregard for the safety and health of the Victims. The majority itself acknowledges that "[u]nder the jury instructions given, a reasonable jury could find that Defendants' inactions showed a reckless disregard for a substantial and unjustifiable risk of serious harm to the safety or health of the Victims." *Maj. op.* ¶ 34.

**{41}**  The majority also cites *Benally*, which states that "juror confusion or misdirection may stem not only from instructions that are facially contradictory or ambiguous, but from instructions which, through omission or misstatement, fail to provide the juror with an accurate rendition of the relevant law." *Benally*, 2001-NMSC-033, ¶ 12. As the Court of Appeals concluded in this matter, the district court was required to and did instruct the jury regarding the conduct or course of conduct alleged to be child abuse. The Court of Appeals acknowledged that the district court instructed the jury on both UJI 14-622 NMRA, entitled *Child Abuse Resulting in Death; Reckless Disregard; Child Under 12; Essential Elements*, and UJI 14-615 NMRA, entitled *Child Abuse Resulting in Great Bodily Harm; Essential Elements*. *See State v. Taylor*, 2021-NMCA-033, ¶ 25, 493 P.3d 463. As the Court of Appeals held, in accordance with UJI 14-622, the district court properly instructed the jury on the elements necessary to find Defendants guilty of reckless child abuse. *Taylor*, 2021-NMCA-033, ¶ 21. Specifically, the district court instructed the jury that it must find Defendants recklessly disregarded a "substantial and unjustifiable risk of serious harm" by failing to follow CYFD procedures in caring for the Victims and/or failing to remove the Victims from the vehicle. In so doing, the district court instructed the jury on two theories, specifically, failing to comply with CYFD requirements and/or failing to remove the Victims from their car seats.

**{42}**  It is clear from the record that substantial evidence supported Defendants' convictions for reckless child abuse, and there was substantial evidence supporting both theories. As outlined by the Court of Appeals and presented at trial, the State showed that Defendants disregarded CYFD safety policies designed to prevent harm to children and in which Defendants had been trained. *See id.* ¶ 13. As noted by the Court

of Appeals, Defendants were aware that they needed permission from CYFD to drive the children in their personal vehicles and did not have permission to do so. *See id.* Moreover, the Court of Appeals also asserted that the record demonstrates that Defendants were trained on CYFD policies requiring caregivers to perform headcounts to account for all children under their supervision when moving from one location to another and that Defendants failed to do so. *See id.* Additionally, as the Court of Appeals states, the State demonstrated at trial that Defendants failed to follow CYFD policies on the day in question despite having been reprimanded for violating CYFD policies in the past. *See id.* ¶ 14. These failures to comply with CYFD policy amounted to reckless disregard for the safety and health of the Victims. As the Court of Appeals also stated, the State's theory at trial was that Defendants' conduct on July 25, 2017, demonstrated a reckless disregard for the safety and health of the Victims, which resulted in death and severe injuries. *See id.* ¶ 4. The Court of Appeals noted as well that to demonstrate the harm allegedly caused by Defendants' conduct, the State presented testimony from CYFD and compliance reports showing Defendants were in violation of numerous CYFD safety policies on the day in question. *See id.*

**{43}** "[A] conviction under a general verdict must be reversed when it is based on more than one legal theory and at least one of those theories is legally, as opposed to factually, invalid." *State v. Mailman*, 2010-NMSC-036, ¶ 12, 148 N.M. 702, 242 P.3d 269. This Court emphasized in *Montoya*, 2015-NMSC-010, ¶ 31, 345 P.3d 1056, that "the overriding concern . . . is that the jury's verdict must be clear about the crime of which the defendant was convicted." *See also* Rule 5-611(A) NMRA ("The verdict shall be unanimous and signed by the foreman."). "The [judicial] rules and [uniform jury] instructions either refer generally to a requirement of jury unanimity or require only that the jury agree on a verdict." *See State v. Salazar*, 1997-NMSC-044, ¶ 34, 123 N.M. 778, 945 P.2d 996 (discussing whether unanimity is required on two underlying theories of first-degree murder).

**{44}** Thus, the State in this case advanced many different factual theories of guilt to support the legal theory of reckless child abuse. The first element of the jury instructions allowed the jurors to rely on different acts or combinations of actions to conclude that Defendants engaged in two theories of reckless child abuse proposed by the State in the second element: endangering the children or exposing them to the inclemency of the weather. The second element of the jury instruction states, "By engaging in the conduct described in [the first element], [Defendants] caused or permitted [the Victims] to be placed in a situation that endangered the life or health of [the Victims] or to be exposed to inclement weather."

**{45}** A review of the jury instructions demonstrates that they were sufficiently clear regarding the theories advanced by the State despite the "and/or" inclusion. The jurors did not need to be unanimous regarding the factual basis of Defendants' charges but did need to agree on the legal theory of recklessness. As demonstrated by the record in this case, the jurors did agree, and the convictions were unanimous. Despite the majority's artificial limitations on *Godoy*'s holding, my view is that *Godoy* is instructive in this matter, and I agree with the Court of Appeals in its decision to cite *Godoy*, which states, "[W]here alternative theories of guilt are put forth under a single charge, jury

unanimity is required only as to the verdict, not to any particular theory of guilt." *Godoy*, 2012-NMCA-084, ¶ 6. "[A] jury's general verdict will not be disturbed in such a case where substantial evidence exists in the record supporting at least one of the theories of the crime presented to the jury." *Id.* (internal quotation marks and citation omitted). As the Court of Appeals further observed, *Godoy* states that "[w]e have never suggested that in returning general verdicts in such cases the jurors should be required to agree upon a single means of commission, because different jurors may be persuaded by different pieces of evidence, even when they agree upon the bottom line." *Id.* ¶ 7 (alteration in original) (internal quotation marks and citation omitted). Therefore, under established law there is no basis on which to declare that the jury instructions, as written, constitute reversible error.

**{46}** As this Court held in *State v. Parish*, 1994-NMSC-073, ¶ 4, 118 N.M. 39, 878 P.2d 988,

> A jury instruction standing by itself may appear defective. However, when considered in the context of the other instructions given to the jury it may "fairly and accurately state the applicable law." From the early case *State v. Crosby*, [1920-NMSC-037, ]26 N.M. 318, 191 P. 1079 (1920), we can glean two principles to guide our determination of whether the defective jury instructions gave rise to reversible error: (1) "an erroneous instruction cannot be cured by a subsequent correct one," and (2) "instructions must be considered as a whole, and not singly." These principles address three situations: erroneous instructions, vague instructions, and contradictory instructions. . . . As *Crosby* states, if an instruction is facially erroneous, it presents an incurable problem and mandates reversal. On the other hand, if a jury instruction is capable of more than one interpretation, then the court must next evaluate whether another part of the jury instructions satisfactorily cures the ambiguity. Finally, if the jury is given two contradictory instructions, each of which is complete and unambiguous, reversible error occurs because it is impossible to tell if the error is cured by the correct instruction; furthermore, there is no way to determine whether the jury followed the correct or incorrect instruction. The standard against which the court makes its determination is that of the reasonable juror. . . . Reversible error arises if, under the principles just described, a reasonable juror would have been confused or misdirected.

*Parish*, 1994-NMSC-073*, ¶ 4 (citations omitted). In *State v. Trossman*, 2009-NMSC-034, ¶ 8, 146 N.M. 462, 212 P.3d 350, this Court emphasized that "[w]hatever the case, the ultimate concern of the reviewing court must be whether 'a reasonable juror would have been confused or misdirected.'" *Id.* (citation omitted). "Juror confusion or misdirection may stem from instructions which, through omission or misstatement, fail to provide the juror with an accurate rendition of the relevant law." *State v. Luna*, 2018-NMCA-025, ¶ 19, 458 P.3d 457 (internal quotation marks and citation omitted). Overall, the jury instructions were sufficiently clear regarding the theories advanced by the State despite the "and/or" inclusion. In addition, the jury instructions accurately instructed the

jury on the applicable law. *See Montoya*, 2015-NMSC-010, ¶ 25 (quoting *State v. Cabezuela*, 2011-NMSC-041, ¶ 21, 150 N.M. 654, 265 P.3d 705 ("[Jury instructions] are to be read and considered as a whole and when so considered they are proper if they fairly and accurately state the applicable law." (alteration in original))). The jurors did not need to be unanimous regarding the factual basis of Defendants' charges but did need to agree on the legal theory of recklessness. As demonstrated by the record in this case, the jurors did agree, and the convictions were unanimous.

## II.    CONCLUSION

**{47}**    Like the Court of Appeals, I too believe that the province of the jury should not be invaded, nor should jurors' capacity to understand instructions given them be underestimated, particularly given the jury unanimously agreed upon a verdict. *See State v. Sutphin*, 1988-NMSC-031, ¶ 21, 107 N.M. 126, 753 P.2d 1314 ("This court does not weigh the evidence and may not substitute its judgment for that of the fact finder so long as there is sufficient evidence to support the verdict.") As this Court held in *Morga v. FedEx Ground Package System, Inc.*, 2022-NMSC-013, 512 P.3d 774, "Taking the respective roles of the judge and jury into consideration, this Court will not disturb a jury's verdict except 'in extreme cases.'" *Id.* ¶ 19 (citation omitted).

**{48}**    The district court did not err by tendering the elements instruction to the jury. Defendants have failed to point to any portion of the record to support the majority's position that there was a "significant risk of jury confusion and misdirection" created by the use of the term *and/or* in identifying Defendants' underlying course of conduct in the jury instructions as framed, which would require a reversal of Defendants' reckless child abuse convictions and necessitate a new trial. *Maj. op.* ¶ 35. Accordingly, with respect, I am compelled to dissent.

**James T. Martin, Judge**
**Sitting by designation**