This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-38037**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**THEODORE JASON LUJAN,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF MORA COUNTY**
**Abigail Aragon, District Court Judge**

Raúl Torrez, Attorney General
Benjamin Lammons, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Mary A. Barket, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**IVES, Judge.**

**{1}** Defendant Theodore Jason Lujan was convicted of child abuse for endangering his child, T.L., by exposing him to cocaine, contrary to NMSA 1978, Section 30-6-1(D) (2009). Defendant appeals, arguing that the given instruction misstated the mens rea for child abuse by endangerment and that his conviction is not supported by sufficient

evidence.[1] We reject his jury instruction argument, but reverse his conviction based on insufficient evidence.

## DISCUSSION

### I.    The Given Jury Instruction

**{2}**    Defendant argues that fundamental error occurred when the jury received an instruction on child abuse by endangerment that failed to accurately describe the mens rea of reckless disregard. The given instruction was based on UJI 14-612 NMRA. We certified the question raised by Defendant to our Supreme Court, which accepted certification and, based on its opinion in *State v. Taylor*, 2024-NMSC-011, 548 P.3d 82, ordered us to affirm the validity of the mens rea set forth in UJI 14-612. We must therefore reject Defendant's argument.

### II.   Sufficiency of the Evidence

### A.    Standard of Review

**{3}**    The sufficiency of the evidence standard of review "is highly deferential to a jury's decision." *State v. Slade*, 2014-NMCA-088, ¶ 14, 331 P.3d 930. We "view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Chavez*, 2009-NMSC-035, ¶ 11, 146 N.M. 434, 211 P.3d 891 (text only) (citation omitted). This deference has limits, of course. Our role as a reviewing court entails "scrutiny of the evidence and supervision of the jury's fact-finding function to ensure that, indeed, a rational jury *could* have found beyond a reasonable doubt the essential facts required for a conviction." *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829 (text only) (citation omitted). We must "ensure that the jury's decisions are supportable by evidence in the record, rather than mere guess or conjecture," *State v. Vigil*, 2010-NMSC-003, ¶ 4, 147 N.M. 537, 226 P.3d 636 (text only) (citation omitted), and "evidence from which a proposition can be derived only by speculation among equally plausible alternatives is not substantial evidence of the proposition," *Slade*, 2014-NMCA-088, ¶ 14 (text only) (citation omitted). Further, the evidence must allow the jury "to conclude that the defendant actually committed the criminal act [they are] accused of, not just that [they] may have done it among a range of possibilities or that it cannot be 'ruled out' among other possible explanations, or even that it is more likely than not." *State v. Consaul*, 2014-NMSC-030, ¶ 70, 332 P.3d 850.

### B.    Defendant's Conviction Is Not Supported by Sufficient Evidence

---

[1]Defendant also appeals the district court's designation that his offense was a serious violent offense, which limited the number of days Defendant could earn toward his sentence each month. *See* NMSA 1978, § 33-2-34 (2015, amended 2025). Because we reverse his conviction, we do not address this argument.

**{4}** Defendant challenges the sufficiency of the evidence for the first three elements of child abuse by endangerment: (1) Defendant exposed T.L. to cocaine; (2) in doing so, Defendant endangered T.L.'s life or health; and (3) Defendant showed a reckless disregard for T.L.'s safety or health. Because we conclude that the first element is not supported by sufficient evidence, we reverse his conviction without discussing the other two elements. We measure the evidence against the given jury instruction, *see State v. Holt*, 2016-NMSC-011, ¶ 20, 368 P.3d 409, which, for the first element, required the State to prove beyond a reasonable doubt that Defendant "exposed [T.L.] to cocaine . . . on or about the" day T.L. died. For reasons we will explain, we conclude that although the evidence established that someone exposed T.L. to cocaine, the evidence did not support a rational inference that the person who did so was Defendant. Stated differently, we conclude that speculation is required to attribute the exposure to Defendant; it is equally plausible that T.L.'s mother was responsible for the exposure. *See Slade*, 2014-NMCA-088, ¶ 14.

**{5}** Whether T.L. was exposed to cocaine is not in dispute. T.L. was just over six weeks old when he died on a Sunday night or Monday morning while in bed with Defendant. Two of the State's experts, Drs. Rong-Jen Hwang and Heather Jarrell, testified that T.L. had traces of cocaine in his blood the day he died—testimony substantiated by two separate medical reports. This evidence supports a rational inference that someone exposed T.L. to cocaine at some point in time.

**{6}** However, we do not believe that the evidence suffices to affirm the jury's finding that the person who exposed T.L. was Defendant. In support of that finding, the State relies heavily on a proposition about the timing of the exposure. Specifically, the State asserts that the jury could have reasonably found that T.L. inhaled cocaine while sleeping in bed with Defendant on Sunday. But this assertion is not supported by the evidence. Our review of the record reveals no evidence from which a jury could have rationally inferred, as opposed to speculated, that T.L. was exposed on Sunday or, for that matter, during any particular timeframe. Indeed, the State's own expert expressly declined to identify any period of time when T.L. was exposed. Dr. Hwang testified that he could only confirm T.L. had cocaine in his system at the time of testing and cautioned that "we have no way to predict" the amount of cocaine a person consumed or when they consumed it. Dr. Hwang also discussed cocaine's half-life, explaining that the amount of cocaine in a person's system is cut in half every 0.7 to 1.5 hours—depending on the person. However, Dr. Hwang never identified a half-life for T.L., and he did not provide the jury with any calculation, based on the range of 0.7 to 1.5 hours, that in any way estimated a specific time, or even a time period, when T.L. was exposed. When the prosecutor asked Dr. Hwang if a child could test positive for cocaine three days after consumption, Dr. Hwang responded, "It's all a possibility depending on how much [cocaine there] is." In short, Dr. Hwang's testimony did not establish when T.L. consumed cocaine or provide evidentiary support for a rational inference about the timing.

**{7}** Without establishing when T.L. was exposed, the evidence fell short of proving beyond a reasonable doubt that Defendant actually exposed T.L. to cocaine, and

instead merely showed that Defendant "may have done it among a range of possibilities." *See Consaul*, 2014-NMSC-030, ¶ 70. Both Defendant and Sophia Romero—T.L.'s mother and primary caretaker—admitted to using cocaine at the family home while T.L. was alive. Defendant admitted to using cocaine five times during T.L.'s life. He used the drug at the house, at work, and at a friend's house. He admitted to using the drug with and without Ms. Romero, and as close in time to T.L.'s death as the Friday before. Ms. Romero testified that she used cocaine during T.L.'s life "probably a half dozen times at least," including at the house and without Defendant. Ms. Romero denied using cocaine or bringing it into the home in the days leading up to T.L.'s death, but admitted to using cocaine at the house one to two weeks before his death. Lastly, T.L. generally stayed at home with Ms. Romero, except during the weekend of his death when the family left home for T.L.'s baptism that Sunday, and then they went out to eat, ran several errands, and returned home. Although T.L. was in the presence of several people outside of his immediate family that day, none were cocaine users to Ms. Romero's knowledge. This evidence narrows down who may have exposed T.L. to cocaine, and Defendant is one of those people. But it is equally plausible that Ms. Romero exposed T.L. because the timing of the exposure is unclear, and she admitted to using cocaine in the house while T.L. was alive. *See Slade*, 2014-NMCA-088, ¶ 14. In other words, the evidence does not prove beyond a reasonable doubt that Defendant exposed T.L. to cocaine. *See Consaul*, 2014-NMSC-030, ¶ 70.

**{8}** Defendant's admission that he used on that Friday deserves more discussion as it is the use closest in time to T.L.'s death. Viewing his admission in the light most favorable to the verdict, *see Chavez*, 2009-NMSC-035, ¶ 11, even if the jury could have reasonably inferred that Defendant used cocaine that Friday in the bedroom—a room T.L. went into two days later, on Sunday, the night of his death—the State failed to provide any evidence that Defendant's use that Friday was what exposed T.L. to cocaine. The record is silent as to where T.L. was during Defendant's use, and the record is devoid of other evidence that supports, directly or circumstantially, T.L. being exposed on that Friday.

**{9}** Lastly, the State argues that the jury could infer that Defendant exposed T.L. on Sunday, the night of T.L.'s death, because Defendant was the only person in the room with T.L. that night, and Ms. Romero and T.L.'s sibling, who slept in a separate room, were not exposed to cocaine. We are unpersuaded. Concerning the possible exposure of T.L's sibling and Ms. Romero, the State exclusively cites testimony that illustrates that they both slept in a different room that night and were alive the next day. But it provides no evidence to support the proposition that neither person was exposed to cocaine, and we found none. We will not "rely on assertions of counsel unaccompanied by support in the record. *See State v. Smith*, 2019-NMCA-027, ¶ 17, 458 P.3d 613 (internal quotation marks and citation omitted).

**{10}** For these reasons, we conclude that the State failed to present sufficient evidence that Defendant exposed T.L. to cocaine.

**CONCLUSION**

**{11}** We reverse.

**{12}  IT IS SO ORDERED.**

**ZACHARY A. IVES, Judge**

**WE CONCUR:**

**JENNIFER L. ATTREP, Judge**

**MEGAN P. DUFFY, Judge**